HERMA WION, Appellant, v. GRANT L. HAYES, Appellee.

No. 42859.

JUNE 21, 1935.

E. F. McEniry and Thos. E. Mullin, for appellant.

Lewis & Lewis, K. H. Davenport, and W. C. Hoffmann, for appellee.

RICHARDS, J.—Plaintiff brought this action at law to recover damages for personal injuries sustained by her when an automobile in which she was riding as the guest of the defendant overturned. She alleges that the reckless operation of the automobile by defendant was the proximate cause of her injuries, predicating her case upon the provisions of an act of the legis-

lature which, as it appears in the 1931 Code, is in the following words:

"5026-b1. Liability to guest. The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

The trial was had on and following March 15, 1934, and when plaintiff had rested her case in chief, a motion for a directed verdict was made by defendant, the grounds being in substance that there was no showing or evidence in the record sufficient to warrant submission to the jury of the issue of defendant's alleged reckless operation of the automobile. The motion was sustained and a judgment rendered against plaintiff. The ruling on the motion, the first alleged error assigned by appellant, we proceed to consider.

The evidence of plaintiff may be summarized as follows: Plaintiff entered defendant's automobile in Mt. Ayr, after 9 o'clock p. m. on June 16, 1933, as a guest of defendant. Defendant driving, the two parties proceeded one-half mile east, then 3 miles south into the country, then one-half mile west, then approximately two miles north to the place of accident, all over dirt roads excepting the first half mile. The last two miles of the trip, as the car traveled northward, was over a road that had been dragged and was generally smooth, the traveled portion of which was about forty feet wide with two beaten tracks or lanes of travel. The car was traveling on the east or right-hand track. This road was undulating but without large hills. As the car approached the place of the accident, it was descending quite a long hill and reached level ground about 75 or 80 feet south of a place where a cement culvert, 6'x6', and 52 feet long, across the road, had been under construction for a week. Dirt from the excavation for the culvert had been scattered across the width of the road and south over the surface of the road, somewhat irregularly, leaving the road not smooth but "in pretty good shape" according to the testimony of the county engineer. Plaintiff and her husband testified that there were several piles of this dirt from a foot to 3 or 4 feet in depth, one

being near or behind the barricade and some being where the dirt was thrown out of the excavation. Plaintiff's husband testified that the dirt was strewn back, level shape, for a distance of 65 or 70 feet south of the culvert. The depth of the dirt was about two feet at the culvert and this depth tapered off to nothing at a point 65 or 75 feet south of the culvert. A temporary detour around the excavation left the highway about 85 feet south of the culvert, turning traffic eastward through a field on the east side of the excavation. The cement culvert itself had been constructed and it was about 2½ feet below the road level with no filling of dirt over the culvert. About 60 or 65 feet south of the culvert was a barricade made of two-by-fours across a portion of the road. Plaintiff testified that about 1½ miles before reaching the culvert the speedometer showed a speed of 60 miles per hour, and about a mile before reaching the culvert the speedometer showed about 65 miles, "it was between 65 and 70", and that just as the car went over the embankment, just as the car was tipping over, she noticed the speedometer, and it registered 50 miles per hour. Plaintiff testified that while traveling the last two miles, and while driving the previous half mile, she told defendant to slow down, that he was driving entirely too fast. Plaintiff testified that the car was traveling about 60 miles per hour as it came down the hill south of the culvert. She testified that as the car came north towards place of accident she was keeping a lookout ahead, but saw no flares or lights, and that the first thing that attracted her attention was the barricade across the road which she first saw when the barricade was about 20 or 30 feet ahead. That upon seeing the barricade she hollered and the defendant put on the foot brake and pulled the emergency brake and switched off to the east and just missed the barricade and traversed the loose dirt to a point near the culvert where the car went off into the ditch on the east side and turned over on its right side. That after the brakes were applied the wheels were sliding and the car tipped over immediately upon leaving the grade. That the car did not travel any distance after leaving the grade before it tipped over. When asked how many times the car turned over, the plaintiff testified: "It just turned over on its right hand side." After car tipped over defendant opened left door, climbed out, and assisted plaintiff out through same door. The tracks made by the car in the loose dirt were

in a fairly straight line to a point 10 or 15 feet from where the car tipped over, at which point the tracks switched off to the east. The car tipped over very close to the east end of the culvert, and there was testimony that there was 5 or 6 feet space between the car and the culvert as it lay on its side, also testimony that the car struck the culvert. On a subsequent day of the trial, after plaintiff testified as above, she again testified that in the meantime she had examined the place of the accident, and that after so doing it was her judgment the car was three to four hundred feet from the culvert when she first saw the barricade and that the defendant applied his brakes three or four hundred feet south of the culvert. Plaintiff's husband testified that by experimenting with an automobile he found that with ordinary automobile lights the place where the piles of dirt were located on the night of the accident was visible from a point 350 to 400 feet south thereof. There was evidence that after the accident defendant told one of the plaintiff's witnesses to call whatever doctor plaintiff preferred and anything there was to be done defendant would take care of and settle for it. Also evidence of plaintiff's sister that on the fourth day after accident she told defendant that plaintiff was not having proper care at the hospital and asked defendant for money for private room, and that defendant told witness to call the hospital and see plaintiff had the best of care, and that he, defendant, would pay for it. There is evidence that on the night of the accident and very soon thereafter, plaintiff requested a lady, to whose house she was taken, to say that plaintiff's injury had been caused by falling over a guy wire. Some other evidence with reference to the condition of the brakes on the car will be referred to later in the opinion.

Reckless operation of a motor vehicle, within the purview of the statute quoted, has been defined in Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46, in following manner:

"In light of the circumstances under which said chapter 119 was passed, it is apparent, we think, that the Legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'willfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'willful' or 'wanton,'

but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' "

In the case before us, appellant claims that defendant was at fault in operating with brakes known to him to be defective, in operating at a high and dangerous rate of speed when he knew the brakes were inadequate, in not having his car under such control that he could stop within the assured clear distance ahead, in failing to keep a lookout for obstructions in the highway and in failing to drive his car in the place provided for regular traffic, the detour around the culvert. Appellant claims that the concurrence of all these matters, as elements or parts of the whole transaction or happening, was sufficient to establish reckless operation of the car by defendant, at least to such extent that it was a jury question.

With reference to the claim that defendant failed to keep a lookout for obstructions in the highway, we are of the opinion that there is such a total lack of evidence to establish this proposition that it cannot be considered as an element entering into the alleged recklessness.

With reference to the claim that the brakes were defective, the only evidence offered in support thereof is the testimony of plaintiff that the defendant told her that the brakes "weren't good" and "wouldn't stop" and her testimony that in her judgment, based on looking over the ground when in a changed condition nine months after the accident, the brakes were put on three or four hundred feet south of the excavation, after testifying on the previous day that the car was only 20 or 30 feet south of the barricade when the brakes were applied, and the car was switched to the east just missing the barricade. But the plaintiff also testified to the following matters: As defendant drove east the first half mile, the speed was 40 to 50 miles per hour, and at the end of the half mile defendant with his brakes checked the speed sufficiently to make the right angle turn safely. · That defendant then drove south three miles at 40 to 50 miles per hour to the corner where the turn was made to drive the half mile to the west, approaching this corner at 40 to 45 miles per hour. That either before the corner was reached or after it was passed, the plaintiff insisted on turning west at that point to return to town. That the defendant after

passing the corner put on his brakes and came to a stop at a point 60 feet, as plaintiff first testified, and 60 yards, as she testified on a succeeding day, south from the corner. That the application of the brakes at this place slid the wheels and the car stopped but skidded. That defendant then backed up and turned west. The road at and about this corner is practically level. That defendant then drove one-half mile west at 40 to 50 maybe 55 miles per hour and at the end of the half mile threw on his brakes, which checked the speed of the car sufficiently to make the turn to the north in safety. That defendant's car was equipped with four wheel brakes. Plaintiff testified that after the brakes were applied and the car was approaching the culvert the wheels were sliding, and plaintiff's husband testified that he saw a place in the tracks in the soft dirt that looked as if a tire had been sliding a little. In ruling on the motion under consideration, it was the duty and province of the district court to consider *all* of plaintiff's evidence, and of course to consider the same in the light most favorable to plaintiff. At the same time it was the duty of the district court to apply the doctrine adopted by this court, that a scintilla of evidence is insufficient to call for the submission of a case to the jury. Re Estate of Work, 212 Iowa 31, 233 N. W. 28. In Schmidt v. Hayden, 205 Iowa 1369, 219 N. W. 399, this court said:

"The direction of a verdict, in its last analysis, is always a question of the sufficiency of the evidence."

The testimony of plaintiff and her witnesses, that the brakes when sufficiently applied repeatedly slid the wheels, the functioning of the brakes at the two right-angle turns and at the time of the stopping of the car for another turn, the manner in which the speed had been so reduced when it went off the grade and "just tipped over on its right hand side," and proceeded no further, all of which evidence plaintiff offered as credible, must, in reason, be considered as establishing that defendant's brakes were functioning in at least an ordinary manner. In this situation of the record, to submit to the jury the question of defective brakes as an element of recklessness would not accord with the scintilla of evidence rule, because plaintiff's testimony that defendant admitted an alleged fact, namely, defective brakes, shown by plaintiff's evidence to have been a nonfact, is not more than a scintilla of evidence, if it be even that, and her expression

of her judgment as to the place the brakes were applied, the last time before the accident, is likewise insufficient to create a jury question, under all the record before us.

The foregoing reduces the inquiry to a question whether the evidence concerning the three remaining alleged faults on defendant's part, namely, alleged excessive speed, alleged failure to have the car under such control that he could stop within the assured clear distance ahead, and alleged failure of defendant to drive off the highway and over the detour, constituted such a showing of recklessness that the question should have been submitted to the jury. There was testimony of plaintiff that defendant, descending the hill, approached the place of the accident at about 60 miles per hour, although in her petition plaintiff alleges the speed was approximately 50 miles per hour and in her amendment she alleges the speed was more than 50 miles per hour, and although the plaintiff testifies that the time consumed in driving the approximate 6 miles of this trip was more than fifteen minutes. There is also the evidence of the plaintiff that during the trip she twice told defendant he was driving too fast. But neither plaintiff nor defendant, so far as the evidence shows, had any knowledge or warning of the open excavation ahead of them, left without lights, and without warning signs, excepting only the barricade, partly across the road about 65 feet south from the excavation. Plaintiff was maintaining a lookout ahead and saw nothing indicating the danger ahead except and until she saw the barricade. From the instant that this first warning was to be seen, and until the car tipped over and injured plaintiff, no reckless acts upon part of defendant are shown in the record, but on the contrary it must be conceded that, during that short period of time, defendant acted promptly and did all that could be done to minimize and avoid the perils of this sudden emergency, having so reduced the speed of the car that when he turned off the grade to the east, to avoid going into the excavation, the speed of the car had been so checked that it did not proceed further going off the grade, but "just turned over on its right hand side." It follows that the recklessness of the defendant, if any, must be found in his acts before the barricade was seen.

The road on which defendant was driving had been dragged and was smooth, was wide, with two tracks or lanes of travel. Such were the physical facts that enter into the determination

of the recklessness, or want of it, on defendant's part, as he drove along approaching the barricade, at night, and at the rate of speed in evidence. It was well observed in Neessen v. Armstrong, 213 Iowa 378, 239 N. W. 56, that, ''The mind is prone to look upon the result, but unless the acts of the defendant would have been reckless within the meaning of the law without the resulting injury to Neessen, they are not reckless merely because Neessen lost his life.''

In the matter we are considering, the mind is prone to envisage the excavation that stretched across the road ahead, but it seems to us that the fact that this excavation existed cannot be charged up to defendant as one of the facts on which recklessness can be established, under all the evidence in the case. In Welch v. Minkel, 215 Iowa 848, 246 N. W. 775, the court recognized that the want of knowledge, on defendant's part, of a peril approaching him, was a fact to be considered in determining that defendant was not reckless. In Cox v. Des Moines Elec. Light Co., 209 Iowa 931, 229 N. W. 244, the court, in considering the question of negligence, stated a well-recognized rule by saying, ''In other words, due care consists in guarding, not against possibilities, but only against probabilities.'' In the case at bar, not only is there no evidence that plaintiff had any knowledge that this temporary open excavation had been left across the highway, but, as a matter of fact, any traveler upon this road would have been warranted in assuming that should any such excavation become temporarily necessary, it would, at night, be provided with lights or flares or other warning sufficient to enable the traveler to be fully advised, for his safety. Had the evidence shown defendant's knowledge of the peril, or had the peril been one of the permanent and inherent characteristics of the road, as in Cerny v. Secor, 211 Iowa 1232, 234 N. W. 193, and in Hart v. Hinkley, 215 Iowa 915, 247 N. W. 258, the peril of the excavation could have been taken into account on the question of recklessness. The excavation, in the instant case, was a temporary incident to the maintenance or improvement of the road, knowledge of which would not be imputed to defendant. Excluding then, as a factor establishing recklessness, consideration of the temporary and extraordinary condition, in the vicinity of the culvert, but considering the rate of speed upon the road as described, and all the record, we fail to find that a prima facie case of recklessness was made, within the intention of the

legislature in enacting section 5026-b1. We conclude the district court did not err in sustaining defendant's motion. There may have been negligence, but there was not shown any act of utter indifference to the safety of the guest in the car. Wilde v. Griffel, 214 Iowa 1177, 243 N. W. 159, and Levinson v. Hagerman, 214 Iowa 1296, 244 N. W. 307. The furnishing of funds for the urgent needs of plaintiff in the hospital is not earmarked, by any evidence, as constituting any admission of recklessness. The statement of plaintiff to defendant that the defendant was driving too fast would be of some weight if there was any other evidence of wantonness or willfulness, in the absence of which this evidence adds but little more to the situation considered as a whole than an expression of plaintiff's opinion.

The claim that there was recklessness in failing to leave the highway and pursue a course over the detour is not borne out by the evidence, on account of there having been on the road no warning or notice to travelers of the existence or necessity of taking such detour, and same was merely an incidental part of the condition around the excavation, which matters have been fully discussed above.

· Other matters relied on by appellant for reversal have been argued. After careful consideration we do not find any reversible errors therein.—The case is affirmed.

ANDERSON, C. J., and all associate Justices concur.