ELEANOR MESCHER, Appellee, v. FRANCIS BROGAN et al., Appellants.

No. 43849.

574

April 6, 1937.

Salinger, Reynolds & Meyers, for appellee.

E. A. Wissler, Kline & Neu, C. D. Reed, and Putnam, Putnam, Fillmore & Putnam, for appellants.

Hamilton, J.—''Negligence'' is want of ordinary care under the circumstances. ''Ordinary care'' means such care as an ordinarily prudent person would exercise. ''Recklessness'' is said to be conduct amounting to more than negligence. The surrounding circumstances in each particular case enter and must be considered in determining the question. As the danger becomes more manifest and apparent the degree of care and

caution to be taken must likewise increase. "Recklessness" is defined by this court in the case of Siesseger v. Puth, 213 Iowa 164, at page 182, 239 N. W. 46, 54, as " 'proceeding without heed of or concern for consequences', " and "implies 'no care, coupled with disregard for consequences'."

In Neessen v. Armstrong, 213 Iowa 378, 383, 239 N. W. 56, 59, the meaning of "recklessness" is expressed in the following statement:

"In order for conduct to be reckless within the meaning of the law, it must be such as to manifest a heedless disregard for or indifference to the rights of others."

Sometimes the word "utter" has been added, as in the case of Levinson v. Hagerman, 214 Iowa 1296, 1299, 244 N. W. 307, 308, where the court said:

"This statute means that the plaintiff must show some act which would be pronounced an utter indifference to the safety of the guest in his car."

No amount of explanation can add much to the meaning to be implied from the use of the word "reckless". The difficulty comes in applying the rule to the facts in any particular case. In the case at bar it is the contention of the appellant that the defendants' motion to direct a verdict should have been sustained for the reason that under the facts, defendant's conduct did not rise to the point of recklessness. In passing upon this matter, the rule to be observed was well stated by Justice Wagner in his dissenting opinion in the case of Siesseger v. Puth, 213 Iowa 164, at page 188, 239 N. W. 46, 56, in the following language:

"The rule in regard to the submission to the jury of the question whether the conduct of defendant constitutes recklessness, is the same as applies to the determination of any other question of fact involved in the case. The rule is that if reasonable minds, having before them all of the evidence upon the question, could reach but one conclusion, the question then becomes one of law for the court. But if, under the proven or admitted facts, different minds might reasonably reach different conclusions, the question is then one of fact for the determination of the jury. See Sergeant v. Challis, 213 Iowa 57, 238 N. W. 442, and cases therein cited."

Clothed in a little different language, the same rule is announced in the second case of Siesseger v. Puth, 216 Iowa 916, 926, 248 N. W. 352, 357, by Justice Kintzinger, wherein he said:

"Recklessness is an inference of fact to be drawn from the evidence offered, and is a matter for the determination of the jury. [Citing cases.] The same rule of law as to the sufficiency of the evidence in negligence cases should also apply to cases involving recklessness. It is the well settled law in negligence cases that if there is any evidence tending to show negligence, that question should be submitted to the jury. So, likewise, in recklessness cases it should also be the rule that if there is any evidence tending to establish the charge of recklessness, that question should also be submitted to the jury. To hold otherwise in this case would be invading the province of the jury."

In Wright v. What Cheer Clay Products Co., 221 Iowa 1292, 1299, 267 N. W. 92, 95, Justice Anderson, speaking for the court, said:

"It is not sufficient to show negligence, but the plaintiff must go further than this and show a rash, heedless, disregard of danger that would be apparent to or reasonably anticipated by a person exercising ordinary prudence and caution under existing circumstances."

In order to be reckless within the meaning of the statute, one does not need to act willful, wanton, or with intent to injure.

Many other quotations could be made from the various decisions involving this question of reckless driving. But sufficient has been said to indicate the gist of the holdings of this court upon this subject. The question then is: Was there evidence from which the jury, acting as reasonable men, might find that the defendant in the instant case, at the time of the accident and immediately prior thereto, was proceeding without heed of, or concern for, consequences, or in such a way as to manifest a heedless disregard for, or indifference to, the rights of the guests in his car? What are the facts as shown by the testimony in this case?

The accident occurred on July 4, 1933, sometime after twelve o'clock midnight, near the city of Jefferson, Iowa. A party of five young people in a Chevrolet car, driven by the defendant, Francis Brogan, were going home from a dance which

they had attended at Spring Lake. The plaintiff was sitting in the front seat of the car with the driver, and the others were in the back seat. There was evidence that the defendant was somewhat out of humor, due to the refusal of the plaintiff to accede to some of his wishes made known to her at the dance, and at the time they started home he was still in this frame of mind. The car was parked between two trees in a park near the dance scene, and as they proceeded to leave the premises the defendant barely missed one of these trees, and as he went down the road, the plaintiff looked at the speedometer and after they had gone some distance the car was traveling at fifty miles an hour. The evidence showed that this speed increased as they went down the graveled highway. They passed several cars and were proceeding at such a rate of speed as to alarm the plaintiff and other guests in the car to some extent, and plaintiff admonished the driver with reference to the high rate of speed and begged him to slow down and called his attention to the fact that someone might be hurt and he would be responsible for the consequences. In response to this, defendant said, "You have got to die sometime, you might as well here as any place." As they were going along the highway about sixty or sixty-five miles an hour over a graveled road, upon which the gravel was firm, they came upon a curve or turn in the highway. Just a moment before the accident happened one of the girls in the car screamed, "There's a corner." The car was equipped with the ordinary headlights and also a spotlight. The moon was also shining. There was a slight elevation in the road just before they came to the turn, but it appears from the photographs that this was very slight. The width of the graveled road at this corner was from 40 to 45 feet. The evidence would indicate that none of the party were acquainted with the location of this corner, and while the plaintiff testified that she thought it was the same road over which they had proceeded in going to the dance, the defendant testified that he had never driven over the road before, and the fair inference is that no one in the car knew of this turn in the road, and no one observed that there was such turn until just a second or two before it was reached. There was just time for the girl to scream, and the next moment they were in the ditch. While one of the girls testified that she saw in the distance that they were coming to a corner, and that she told the driver to slow down, she later admitted that she did not tell him there was a

corner. She also testified that she could see the corner for quite a distance, and had been screaming all the time for him to slow down. She later testified that she did remember saying that there was a corner. The fair inference to be drawn from all the testimony is that no one observed the corner in time to avoid the accident. This girl testified: ''I just remember of seeing a corner and in a second we were over.''

''Q. You saw the corner and the going of the car over the embankment was almost instantaneous, wasn't it? A. · Yes. I didn't give any warning that the corner was there. I didn't have time to. I don't think I would have had time to say 'look out, there is a corner', or anything like that. I judged he would see it, too.''

The car was equipped with good brakes and there was nothing about the operation of the car except the speed that they were traveling to alarm the occupants of the car. The plaintiff herself testified the speed of the car was the only thing she was protesting about. The defendant in his testimony said that when he saw the corner he was too close at the speed he was traveling to make the turn without turning over, and he therefore slammed on the brakes and turned the car straight into the ditch, and that the car traveled about the length of itself before it was stopped and turned over on its side. Other evidence indicated that the distance the car traveled from the edge of the graveled highway was about 25 or 30 feet, and that it struck the bottom of the ditch and went up against an embankment on the opposite side of the ditch and turned over on its side.

There is nothing in the testimony to indicate that the driver did not exercise all the care possible to avoid injury after he discovered the corner or turn in the road. In other words, there is no evidence of recklessness, or even want of care, in the operation of the car from the moment the defendant discovered that he could not make the turn in safety. The recklessness, if any, consists in the high rate of speed at night with visibility limited, coupled with his apparent attitude of indifference to consequences and to the rights of the other occupants of the car, most of whom, according to the evidence, were plainly indicating that they were frightened at the speed he was traveling at night over a graveled highway, which was not marked, when the driver knew, or in the exercise of ordinary care should have known,

that he might come upon a turn or sudden curve in the road. We think the evidence presents a case, not of one driving in the face of apparent danger, but a danger reasonably to be anticipated by a person exercising ordinary prudence and caution under the circumstances, and that under all the facts and circumstances, it was for the jury to determine, and not a case presenting facts upon which minds of reasonable men might not differ as to whether the conduct of the defendant came within the definition of recklessness, as defined by this court, as hereinbefore set forth.

Counsel for appellant lay much stress upon the fact that the defendant driver was not acquainted with the highway and did not know that he was approaching this curve or turn in the road, and that for this reason the case is distinguishable from Hart v. Hinkley, 215 Iowa 915, 247 N. W. 258, relied upon by appellees. In the Hart v. Hinkley case, the driver had knowledge of the fact that there were two abrupt turns at the end of the bridge which he was approaching and knew of the probable consequences in attempting to make these turns at a high and dangerous rate of speed, and that it is knowledge of danger that distinguishes recklessness from negligence. They argue that: ''Recklessness is a state of mind and involves moral turpitude, and the lack of knowledge has always been most important in deciding whether a driver is reckless. If he has no knowledge of an impending danger he is not reckless.'' This is not the rule under the decisions of this court. This is the rule under the statute in the state of Michigan (Comp. Laws 1929, section 4648) where the requirement is that in order for a guest to recover he must show that the acts of the driver constituted ''gross negligence or willful and wanton misconduct.'' Elowitz v. Miller, 265 Mich. 551, 251 N. W. 548, 549. Whereas in Siesseger v. Puth, 213 Iowa 164, at page 182, 239 N. W. 46, 54, this court said: ''Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton.' '' In the recent case of Wright v. Mahaffa, 222 Iowa 872, 270 N. W. 402, we held the question of recklessness was for the jury, and there wasn't any evidence indicating wilfulness or wantonness, and in that case we said:

''The term 'recklessness', as announced in the foregoing

cases, can be said to be construed as meaning something more than negligence or want of reasonable care; that it means proceeding without heed of or concern for consequences; that it may include willfulness or wantonness, but if the conduct is more than negligent, it may be reckless without being willful or wanton; recklessness implies no care, coupled with disregard for consequences, and in the operation of an automobile signifies the driving of a car in a heedless disregard for consequences. The acts must be such as to manifest a heedless disregard for, or indifference to, the rights of others; something that indicates an indifference to consequences; and in the operation of an automobile signifies the driving of the car in heedless disregard for consequences.''

The difficulty in determining when negligence leaves off and recklessness begins will be greatly diminished if we keep in mind that in this state we do not recognize degrees of negligence, and when we say that recklessness means more than negligence, it is tantamount to saying that recklessness means more than want of ordinary care, and it does not necessarily mean conduct which transcends or goes beyond what is considered gross negligence in those states recognizing degrees of negligence. To so hold would compel us to adopt the rule contended for by appellant that to be reckless one's conduct must be wanton and willful and involve moral turpitude. Appellant also contends that the rule announced in Cox v. Des Moines Electric Light Co., 209 Iowa 931, 229 N. W. 244, 247, and cited in Wion v. Hayes, 220 Iowa 156, 261 N. W. 531, that ''due care consists in guarding, not against possibilities, but only as against probabilities,'' takes this case out of the realm of recklessness, for appellant says that the fact that there may be a curve in the road is simply a possibility, and in no manner can be considered a probability. This indicates the height of absurdity to which counsel for appellants are apparently driven to sustain their contention that the court was in error in permitting this case to go to the jury. Everyone who has reached the age of accountability and who operates a car upon the highways of this state must know that aside from the primary roads, more or less abrupt curves and turns will be met with every few miles, and that this is not only possible but the probability is such as to virtually amount to an absolute certainty. The truth

of this statement is so obviously generally known as to require no further proof.

Likewise, appellant stresses the fact that there was no swerving of the car. He is justified in this from the fact that special emphasis has been placed on this matter of swerving in some of our cases. This reasoning is in the writer's opinion, unsound, as this case demonstrates. A car is no less out of control as evidenced by swerving than it is when going in a straight line at such a rapid rate of speed that to vary or change its course to pass an object or make a turn would be impossible of accomplishment without an upset. In either event the driver is rendered helpless to avert a catastrophe. Of course, as this court has said, speed alone is not enough, but speed, coupled with limited visibility, congested traffic, slippery road surface and the like, may be sufficient to present a question for the jury.

In this case the defendant driver showed a mental attitude of indifference to consequences as evidenced by his flippant response to the earnest and serious solicitation of his companions to lessen his speed, and while he was not obliged to gauge the speed of his car to suit the fancy or whim of a nervous, irritable passenger, the nervousness and fear of the passengers in this instance proved to be well-founded, and had he not been indifferent to, and heedless of, their reasonable protests, the catastrophe might have been averted. We do not wish to be understood as laying any great stress upon the remark made by the defendant. This in itself had nothing to do with the inevitable result which followed the method of operating his car. The accident would have taken place at the rate of speed he was traveling if there had not been a word said by anyone. In other words, the consequences were neither added to, nor detracted from, by this statement or by his mental attitude. It is the actions and conduct, and not the mental attitude of the actor, that measure the degree of care and determine whether or not one is proceeding without heed of, or concern for, consequences, and with a heedless disregard for, or indifference to, the rights of others. In other words, the operator of a motor vehicle may have nothing but love and kindness and the utmost regard for the guests in his car, yet his conduct in the operation of his car be such as to warrant the implication of an utter lack of care,

and to manifest an indifference to the safety or lives of his guests, and to indicate a heedless disregard for consequences.

Here we have this young man operating his car at a rate of speed which he knew (he said he saw he could not make the turn, and so took to the ditch) was such that if he came to a turn in the highway he would have to take the ditch or upset. He knew this because the distance ahead that he could discern a turn in the road was so short that it was not humanly possible to apply his brakes and slow down to a speed at which he could make the turn. When he knew all this, or in the exercise of a proper degree of caution should have known, he went on at 65 miles an hour, 95 feet every second. It was not speed alone. It was speed, plus limited visibility, plus the turn in the highway. Was this conduct recklessness, or was it merely failure to exercise ordinary care? We think it was a matter properly submitted to the jury. The record is not one upon which the minds of all reasonable men could come to but one conclusion. Accordingly, the case is affirmed.—Affirmed.

ANDERSON, DONEGAN, PARSONS, KINTZINGER, STIGER, and MITCHELL, JJ., concur.

SAGER, J., concurs in the result.