J. M. FRASER, Administrator, Appellee, v. WALTER BRANNIGAN et al., Appellants.

No. 45243.

JUNE 18, 1940.

Kelleher & Donohoe, for appellee.

Shaw & Shaw, for appellants.

MITCHELL, J.—J. M. Fraser as administrator of his son's estate commenced this action against Walter and Ronald Brannigan to recover damages for injuries causing the death of James Fraser, while he was riding as a guest in an automobile. The defendants pleaded a denial of recklessness and a plea of emergency. Case was submitted to a jury which returned a verdict for the plaintiff in the amount of $2,750. Defendant has appealed.

Ronald Brannigan and James Fraser were friends and classmates in the senior class of the high school at Pocahontas, Iowa. On the morning of December 11, 1938, James accepted the invitation of Ronald to accompany the Brannigan family from the church services which they attended in Pocahontas, Iowa, to the Brannigan farm home, 9 miles from Pocahontas. When they reached the farm, Ronald changed his clothes and with the consent of his father took the Brannigan 1936 Model Chevrolet car. Ronald was driving.

The car was being driven in a southerly direction on a north and south road over a dirt highway which was not traveled very much but over which Ronald traveled often. On this road (besides two other bridges) was a replanked wooden bridge elevated above the earth roadway. It was about 30 years old with earth approaches. The bridge spanned a drainage ditch. The surface of the bridge was somewhat uneven and the high point of the bridge is at a place 40 feet south of the north end and 22 feet north of the south end of the bridge. The drop from this point of the bridge to a point 50 feet south of the south end is exactly 4 feet, equivalent to a 5.7 percent grade which is not evenly distributed. But 2½ inches of the decline is on the bridge itself. The dirt road or approach immediately south of the bridge drops 3.8 feet in 50 feet, making a grade of 7.6 percent. And the first 25 feet immediately south of the bridge the grade was an 8.36 percent grade or a drop of 2.9 feet in 25 feet.

In order to show the condition of the road and bridge where the accident happened, there is inserted here Exhibit J, which is a photograph from a point 80 feet south of the south

end of the bridge. It shows that this road was a narrow winding road, that the road approaching the bridge from the south was at a lower elevation than the bridge by contrast with the guard rails of the bridge.

Ronald Brannigan was familiar with this road, having driven it many times, and it was only about a mile from his home. The driver testified that as the car passed off the bridge and the wheels contacted the earth approach (but 12 feet wide

from ditch to ditch at that point) that the car stayed on the road for some distance then headed southeast toward the east ditch. There is little controversy as to the course the Brannigan car traveled after it left the south end of the bridge. The only dispute covers the first 15 to 20 feet. It is appellee's theory that the car leaving the plank bridge did not contact the road, until it had reached a spot 15 to 18 feet south of the bridge. There is evidence to sustain this, in that the tracks that the car left could only be traced to the spot 15 feet south of the bridge, where there had been cut in the dirt road holes, which appeared as if they were made by the spinning wheels of an auto.

From a point 15 to 18 feet south of the bridge, the Brannigan auto traveled towards the ditch on the east side of the road. The wheel tracks showed that the car traveled on the east edge of the fill to a point 150 feet south of the bridge, before all four wheels were traveling in the ditch. For 150 feet the right wheels were on the edge of the fill, the left on the sloping bank. The car traveled due south in the ditch for some distance. About 200 feet south of the bridge the car hit a tree stump breaking off part of it. About 245 feet south of the bridge there was a gouge or cut in the shoulder of the grade and at this point the bumper broke off. The car cut across the ditch, through a fence and crashed into a cottonwood tree upsetting.

At the close of the evidence the appellant made a motion for a directed verdict, the overruling of this is the main grounds urged for the reversal of the case.

We quote from appellants' brief:

"The error of the court in overruling defendants' motion for directed verdict and for new trial consists and lies in this: That in predicating his action upon the Guest Statute, the plaintiff was required to plead and prove recklessness of the defendant Ronald Brannigan. The evidence introduced at the trial by the plaintiff both wholly failed to show any reckless-

ness of Ronald Brannigan and affirmatively proved that said Ronald Brannigan was not reckless."

■ The standard by which reckless conduct of an automobile driver is determined is well settled in the decisions of the court. Attention is called to the definitions of recklessness as given in a few of the many decisions which define reckless conduct.

In Wright v. Mahaffa, 222 Iowa 872, 876, 270 N. W. 402, 404, citing many of the earlier decisions, the court said:

"The term recklessness as announced in the foregoing cases can be said to be construed as meaning something more than negligence or want of reasonable care; that it means proceeding without heed of or concern for consequences; that it may include wilfulness or wantonness, but if the conduct is more than negligent, it may be reckless without being wilful or wanton; recklessness implies no care, coupled with disregard for consequences, and in the operation of an automobile signifies the driving of a car in a heedless disregard for consequences. The acts must be such as to manifest a heedless disregard for, or indifference to, the rights of others; something that indicates an indifference to consequences; and in the operation of an automobile signifies the driving of the car in heedless disregard for consequences."

In Mescher v. Brogan, 223 Iowa 573, 579, 272 N. W. 645, 649, this court speaking through Chief Justice Hamilton said:

"They argue that: 'Recklessness is a state of mind and involves moral turpitude, and the lack of knowledge has always been most important in deciding whether a driver is reckless. If he has no knowledge of an impending danger he is not reckless.' This is not the rule under the decisions of this court."

The court further said:

"The difficulty in determining when negligence leaves off and recklessness begins will be greatly diminished if we keep

in mind that in this state we do not recognize degrees of negligence, and when we say that recklessness means more than negligence, it is tantamount to saying that recklessness means more than want of ordinary care, and it does not necessarily mean conduct which transcends or goes beyond what is considered gross negligence in those states recognizing degrees of negligence. To so hold would compel us to adopt the rule contended for by appellant that to be reckless one's conduct must be wanton and willful and involve moral turpitude.''

The test is not, as is suggested in the brief for the appellant, the good intentions or mental attitude of the driver but rather his acts and omissions. In the case above cited the court said [223 Iowa 573, 581, 272 N. W. 645, 650]:

''It is the actions and conduct, and not the mental attitude of the actor, that measure the degree of care and determine whether or not one is proceeding without heed of, or concern for, consequences, and with a heedless disregard for, or indifference to, the rights of others. In other words, the operator of a motor vehicle may have nothing but love and kindness and the utmost regard for the guests in his car, yet his conduct in the operation of his car be such as to warrant the implication of an utter lack of care, and to manifest an indifference to the safety or lives of his guests, and to indicate a heedless disregard for consequences.''

And the question is one for the jury if reasonable minds might differ as to whether the actions as revealed in the evidence show recklessness or not.

In Mescher v. Brogan, 223 Iowa 573, 575, 272 N. W. 645, 647, this court said:

'' 'The rule in regard to the submission to the jury of the question whether the conduct of defendant constitutes recklessness, is the same as applies to the determination of any other question of fact involved in the case. The rule is that if reasonable minds, having before them all of the evidence upon the question, could reach but one conclusion, the question then

becomes one of law for the court. But if, under the proven or admitted facts, different minds might reasonably reach different conclusions, the question is then one of fact for the determination of the jury.' ''

■    With the above cited cases in mind, we turn to the record to ascertain the facts. The appellants offered no evidence. The accident occurred on a clear December morning, there was no snow on the ground and the road was dry.

It was a narrow dirt road, which had three wooden bridges crossing the same drainage ditch. There was a slight grade as the road approached the bridge, in fact this continued on the bridge until you reached a point 22 feet from the south edge of the bridge. The approaches were constructed of dirt, the bridge was about 16 feet wide and 62 feet long constructed of wood with a plank floor, and about 30 years old. The approach at the south end was about 12 feet wide.

The recklessness charged and submitted to the jury consisted of the driver's conduct after leaving the bridge. How the car traveled the first 15 to 20 feet is somewhat in dispute, the driver says it was on the road headed south, from the evidence the jury might have found that as it left the bridge, there being a slight drop there, that it was in the air for the first 15 to 18 feet.

From the point 18 feet south of the bridge there is little if any dispute. It traveled along the east bank, the left wheel in the ditch, and the right wheel on the road. It hit a stump and broke part of it off, it went through or over a 5-inch hole and the bumper broke off. It traveled in the ditch for a distance, then through a wire fence, and crashed into a cottonwood tree turning over the car. The car traveled the distance of 300 feet from the bridge to the place it finally came to rest after hitting the cottonwood tree. In this entire distance the brakes, although they were in good condition, were never applied. The driver testified that he tried to put his foot on the brake, but that it slipped off and may have contacted the foot feed. No other effort was made to stop the car.

The undisputed evidence shows that the car going at a rate of 35 miles per hour could have been stopped in 30 feet. The brakes were in good condition, four-wheel hydraulic brakes. The jury could have found from the evidence and the circumstances that the speed of the car increased after leaving the bridge.

The appellants base their argument upon the fact that the driver testified that the car was traveling 35 miles per hour crossing the bridge, and that 35 miles an hour is not an excessive rate of speed, and one could not be considered guilty of recklessness driving at that speed. Thirty-five miles an hour on a paved road today is just loafing along, but on an ungraded dirt road that has three old wooden bridges to cross, is a different story; in other words the condition of the highway on which one is driving must be taken into consideration in order to ascertain whether the speed traveled is reckless or not.

The jury was not bound by the statement of the driver as to the speed, it could take into consideration the facts covering the distance the car traveled.

In Cerny v. Secor, 211 Iowa 1232, 1237, 234 N. W. 193, 195, this court said:

"Under the circumstances here disclosed, the jury was not bound by the statements of witnesses that the car was traveling 30 to 40 miles per hour. Whether defendant said that his brakes locked, and any inference to be drawn therefrom, were matters for the jury to decide. Whether he said that his wheels or steering gear locked, whether they did lock, whether defendant was racing or driving at a reckless speed around curves and through dangerous surroundings, whether he was recklessly inattentive to the control of his car, were questions for the jury, and not for the court. It was for the jury to say what, if any, admissions the defendant made, and what he meant by them. It was a question for the jury whether the accident was proximately caused by defendant's reckless operation of the car."

Here we have a record in which the car traveled 300 feet after it left the bridge. The record shows that had the brakes

been applied, if it was traveling 35 miles per hour, it could have been stopped in 30 feet. Not only did it travel 300 feet, but part of the time along the bank of the road, part of the time in the ditch. It hit a stump, traveled across the ditch, through a fence and crashed into a cottonwood tree. The driver testified that only once did he attempt to put on the brakes; that his foot slipped off the brake pedal and may have contacted the foot feed. The jury from this record could have found the speed increased after leaving the bridge.

It seems to us that the question was for the jury and the lower court was right in overruling the motion to direct.

■■ The next error urged is that one of the pleaded defenses was that an unforeseen condition or emergency was the proximate cause of said accident, and that it was error for the court to fail to submit to the jury the issue of the creation of an emergency.

The unforeseen condition or emergency claimed was that the steering gear was loose. The undisputed evidence shows that both the father and the son knew of this condition for two weeks prior to the accident. Both testified that it did not interfere with the driving of the car.

Before instruction on the emergency plea is called for, there must be some evidence from which the jury could find that the action of the appellant driver confronted with the alleged emergency, was affected by the stress of the occasion. There is no evidence in this record of an emergency, and the lower court did not err in failing to so instruct.

The case was fairly tried, there was sufficient evidence to submit it to the jury which returned a verdict for the appellee. It necessarily follows that the case must be and it is affirmed. —Affirmed.

HAMILTON, C. J., and SAGER, STIGER, HALE, BLISS MILLER, and OLIVER, JJ., concur.