REX E. ROBERTS, Administrator, Appellee, v. JACK KOONS, Appellant.

No. 45341.

March 18, 1941.

Antes & Antes, for appellant.

Estey & Estey, for appellee.

OLIVER, J.—The accident out of which this suit arose occurred March 14, 1939, at about 10 p. m. Plaintiff-appellee's intestate, Raymond Roberts, aged 21 years, while riding in a 1933 Ford tudor coach as a guest of defendant-appellant, Jack Koons, aged 23 years, was killed when said automobile collided with a parked truck. Koons was driving his Ford north on primary highway No. 11, a paved highway 18 feet in width, with dirt shoulders at each side. Raymond Roberts sat in the front seat and at the right. The night was dark and misty with poor visibility, and with sleet and a little dry snow, which a northwest wind at times whipped into gusts or flurries. During these flurries the visibility of the road ahead, from the headlights, was reduced from about 200 feet to about 20 feet or less. The pavement was dry. At the place of the accident the highway was straight and for about 3/5 of a mile to the south was practically level with a slight slope to the north. This place is several miles distant from any town. At the time there was little traffic on the highway and no vehicles or persons were in the vicinity other than the Ford and the truck and their occupants. The truck was a 1928 platform Chevrolet, weighing

about 4,300 pounds, and was empty. The driver testified that it had been stopped for a short time with the headlight and tail-light on the left rear corner lighted but no flares had been put out; that he had just gotten into the cab to start it; that he saw the approaching Ford, or its lights, and that the truck was standing partly upon the east shoulder of the pavement, facing north, with only the left rear wheel upon the east edge of the pavement and the two front wheels entirely off the pavement on the right-hand or east side. Koons said the truck looked like it was on the pavement—it might have been a little off.

The Ford was traveling on the right-hand side of the pavement and its right front end struck the left rear corner of the truck. The force of the impact drove the truck forward and spun it half around. Burned rubber marks indicated its rear wheels slid along the east part of the pavement for about 39 feet. The left rear wheel of the truck was broken and torn off, the steel frame, rear axle and drive shaft were badly bent and it was otherwise damaged. One witness referred to it as a complete wreck. After the accident it lay on its left side facing southeast with its rear end on the east edge of the pavement. The Ford was not overturned, and stopped on the left side of the pavement, facing northeast, its rear end 25 or 50 feet north of the truck. Rubber marks on the pavement indicated the rear wheels of the Ford had slid 87 feet and the front wheels 78 feet to the place where it stopped. The right side of the Ford was crushed and torn back to the rear quarter post, apparently from impact with the platform of the truck and the steel plate covering the platform. The radiator and grill of the Ford were not struck. The right front wheel of the Ford was pushed back under the frame and the tire was blown out. None of the other three tires was blown out. In addition to the physical facts there was testimony from which the jury could have found the Ford was traveling at about 55 miles per hour, and that Koons later admitted he was driving too fast and could not see.

Defendant, Koons, testified he was driving 40 to 50 miles per hour; that his windshield was clear; that just prior to the accident a sudden flurry of snow obscured his vision; that he did not see the truck until it was directly in front of him; that he

swung to the left trying to miss it; that he saw no taillight; that he did not know what he did about the brakes—"it all happened so quick". Afterwards Koons, who had received some cuts and bruises, assisted the driver of the truck in removing Raymond (who was then dead or dying) from the Ford.

Motions of defendant for directed verdict were overruled, the jury returned a verdict for plaintiff, judgment was entered thereon and defendant has appealed.

I. Over appellant's objections the trial court permitted witnesses to give opinion evidence as experts concerning the speed of the Ford. Mr. Stillwell, a highway patrolman, "from observing the truck and the automobile damage and bearing in mind the condition of the paving", expressed the opinion that the car was traveling at a high rate of speed. Mr. Campbell, a garageman, who had handled wrecks, basing his opinion solely upon the extent of the damage to the car and the truck, said he thought the speed of the Ford was at least 55 to 60 miles an hour, and another garageman expressed the opinion it was traveling at a high rate of speed. Mr. Raney, a garageman, basing his opinion of the speed of the Ford solely upon the condition of the truck testified the Ford would have to be traveling from 60 to 70 miles an hour to do that much damage. Upon cross-examination he said that was simply a guess; that the speed was over 40 miles an hour and would be closer to 50 than 45.

Mr. Stillwell testified to no qualifications other than those of an experienced automobile driver, and did not profess special skill, knowledge or experience in the subject matter upon which he expressed his opinion. Hence his competency as an expert was not shown. The opinions of the other witnesses were based solely upon the condition of one or both vehicles after the accident, and apparently did not take into consideration any other physical facts or circumstances shown in the record. We are satisfied these witnesses were not shown to be qualified to give opinion testimony as to the speed of the Ford (which the record shows without dispute was at least 40 to 50 miles per hour) based solely upon the condition of the vehicles after the accident. See Johnston v. Peairs, 117 Cal. App. 208, 3 P. 2d 617.

In Nelson v. Hedin, 184 Iowa 657, 659, 169 N. W. 37, 38, we held that an opinion as to speed, based only upon skid marks, was inadmissible. The decision does not refer to the qualifications of the witness. A similar holding concerning the evidence of a nonexpert witness appears in Ward v. Zerzanek, 227 Iowa 918, 289 N. W. 443. This court has frequently held that a jury may properly draw legitimate inferences from the facts and circumstances of an automobile accident shown in evidence. See cases above-cited, Fraser v. Brannigan, 228 Iowa 572, 293 N. W. 50; Hawkins v. Burton, 225 Iowa 707, 713, 281 N. W. 342, 345. And ordinarily the jury can draw these inferences as well and correctly as the witness. Linde v. Emmick, 16 Cal. App. 2d 676, 61 P. 2d 338, and cases therein cited, is relied upon by appellee. Those cases are not here in point and some of them are contrary to our holdings.

We should not be understood as holding that expert opinion evidence is necessarily inadmissible in automobile accident cases. It would seem to be as proper in such cases as in other civil actions that one who possesses exceptional skill or knowledge of the subject matter may state an opinion, where the facts are such that persons of average intelligence are likely to prove incapable of arriving at a correct judgment without the assistance of such opinion. See Collins v. Atlantic Coast Line R. Co., 183 S. C. 284, 190 S. E. 817. But in any case such witness should be qualified and the facts upon which he bases his opinion should be sufficient to enable a witness so qualified to express an opinion which is more than a mere conjecture. We think the opinion evidence should not have been admitted in the case at bar.

II. Appellant assigns as error the refusal of the court to direct a verdict in his favor, for that the record was insufficient to show reckless operation of the Ford by him. The accident happened on a paved highway in the country. The night was dark and the visibility was bad but the headlight rays of the Ford shone ahead 200 feet most of the time. However, at times the view ahead was temporarily affected by snow flurries. Appellant failed to see the rear end of the truck, illegally parked without flares, which was standing partly upon the pavement in his path. There was evidence that the taillight of the truck was lighted (also the headlights) and it may be he should have seen

the taillight prior to the time it was first obscured by the snow flurry. As the car approached the truck this snow flurry reduced the vision ahead to about 20 feet. Appellant continued to ·drive at the same rate of speed, perhaps 55 or 60 miles per hour, and did not see the parked truck in time to avoid striking it.

The record does not show just what distance the Ford traveled in the snow flurry but it was relatively short. Doubtless, appellant should have decreased its speed when the visibility was reduced. There was evidence that he later admitted he was driving too fast and could not see. But, until he knew or should have observed to the contrary, he was justified in assuming that no trucks would park upon the pavement without displaying flares and that others using the highway would obey the law. He was traveling on the right side of a straight and practically level strip of pavement with which he was familiar. There was then little traffic on the highway. Was the evidence sufficient to warrant the submission of the case to the jury on the theory of reckless operation of a motor vehicle as defined in the guest statute, Code section 5037.10?

To constitute recklessness under the guest statute, conduct must be more than negligent and must be such as to manifest a heedless disregard for, or indifference to, the rights of others or an indifference to or heedless disregard for consequences. It need not involve moral turpitude nor wanton and wilful conduct. The test is the acts and omissions of the driver. See Fraser v. Brannigan, 228 Iowa 572, 293 N. W. 50, and other authorities there discussed.

Appellant's failure to observe the truck before the snow flurry and when the Ford was some distance from it and not in a zone of danger was not in itself recklessness. Nor was it necessarily negligence. We do not here have the situation of one driving into a known or a continuously visible obstruction, or of a peril which was a permanent and inherent characteristic of the highway, or of a known or visible or probable (as distinguished from possible) danger to or from other vehicles during the relatively short distance traveled by the car in passing through each flurry. Some cases bearing upon the foregoing matters are Wion v. Hayes, 220 Iowa 156, 261 N. W. 531; Hart v. Hinkley, 215 Iowa 915, 247 N. W. 258; Mescher v. Brogan, 223 Iowa 573, 272 N. W.

645; Mayer v. Sheetz, 223 Iowa 582, 273 N. W. 138; Reed v. Pape, 226 Iowa 170, 284 N. W. 106; Allbaugh v. Ashby, 226 Iowa 574, 284 N. W. 816; Claussen v. Estate of Johnson, 224 Iowa 990, 278 N. W. 297; White v. Center, 218 Iowa 1027, 254 N. W. 90.

What appellant did was to continue to drive rapidly on the right side of a familiar straight and smooth paved highway, known to be comparatively free from traffic and which he was unaware was then obstructed by the parked truck, without decreasing the speed of his car when the visibility was temporarily reduced. It may be assumed appellant's conduct constituted negligence. The Ford could not be stopped within the assured clear distance ahead. Though the snow flurries were of brief duration there was always the possibility of collision in driving through them at that speed. But we conclude that under all the circumstances these brief derelictions could not be said to show such heedless disregard for or indifference to the rights of others or to the consequences as to justify a finding of reckless driving under the guest statute. Therefore, appellant's motion for directed verdict should have been sustained.

The conclusions heretofore announced render unnecessary the consideration of other assigned errors. The judgment is reversed.—Reversed.

CHIEF JUSTICE and all JUSTICES concur.