JOHN P. NEYENS, as father and next friend of JOHN NEYENS, Appellant, v. DOROTHY GEHL et al., Appellees.

No. 46531.

OCTOBER 17, 1944.

John J. Kintzinger, of Dubuque, and Hogan & Less, of Cascade, for appellant.

Kenline, Roedell & Hoffmann, of Dubuque, and Herrick, Sloan & Langdon, of Des Moines, for appellees.

MILLER, J.—Plaintiff's petition asserted that on May 30, 1942, plaintiff was riding as a guest in an automobile owned by defendant Dorothy Gehl and operated by her brother, defendant Fabian Gehl; while operating said automobile over a narrow, twisting, graveled road it was run into the side of a bridge on the highway, then into the ditch, turning over and injuring plaintiff. The allegations of recklessness were as follows:

"That the injuries and resulting damages to plaintiff, John Neyens, were caused by reason of the reckless operation of the automobile operated by Fabian Gehl at the time and place in question in that said Fabian Gehl heedlessly failed to have said car under control, in driving said car at an excessive rate of speed in approaching and traversing a bridge, at which time the operator of said car stooped over and reached to pick up a cigarette on the floor, without keeping a proper lookout and reducing the speed of said car, running into and crashing through the bridge railing and thence into a ditch; in failing to have said car under control and reducing the speed to a reasonable and proper rate upon approaching and traversing a bridge, at which time the operator of said car stooped over and reached to pick up a cigarette on the floor without reducing the speed of said car and running into and crashing through the railing on the side of the bridge and then into a ditch."

The foregoing allegations were challenged by defendants as being insufficient to constitute a case of recklessness. The court overruled the motion. Plaintiff then amended his petition and alleged as follows:

"That the operator of defendants' car, in addition to the specifications of recklessness set forth in the prior pleadings herein, was reckless at the time and place in question in driving said automobile at a high and excessive rate of speed, without keeping a proper lookout, without having said automobile under control and in failing to reduce the speed of said automobile to a reasonable and proper rate when approaching and traversing a bridge in the public highway."

The foregoing allegations were challenged by defendants. At the hearing, the court stated:

"The court is unable to tell from the manner in which it is written whether that purports to be one single ground of recklessness."

The following conversation then took place:

"Mr. Kintzinger: In drawing this second amendment, we intend to have only one ground of 'recklessness' in the separate charges as set forth herein; these separate parts are not separated by semicolons, but by commas, and it was our intention to join them together and have but one ground of recklessness. The Court: In considering this matter the court is to regard the contents of that paragraph in that light. Mr. Kintzinger: That is right. The Court: That is one single ground of 'recklessness' with a combination of elements? Mr. Kintzinger: That is right, and that is what we are claiming for."

The court overruled defendants' motion. The cause proceeded to trial. At the close of plaintiff's evidence defendants made a motion for a directed verdict, one of the grounds of which was:

"Plaintiff has failed to prove any recklessness on the part of said defendant driver, or any recklessness which in any manner could be charged against the defendant owner, which was the proximate cause of plaintiff's alleged injuries and damages."

The motion was overruled. At the close of all the evidence

the motion was renewed and again overruled. The court then announced: '

"As to the submission of the element of recklessness to the jury the court will submit but one specification of recklessness which will combine the three elements 'speed, lack of control, and failure to maintain a proper lookout.'"

The jury returned a verdict for defendants.

On June 17, 1943, plaintiff filed a motion for a new trial, asserting that the court erred in a certain ruling upon the introduction of plaintiff's evidence and in the giving of various instructions. The motion was overruled. The court's ruling was quite extensive. At the outset thereof, the court stated:

"The jury in this case returned a verdict in favor of the defendants. At the conclusion of all the evidence and prior to the submission of the case to the jury, the defendants made a motion for a directed verdict which raised a serious question in the court's mind as to whether the matter should be submitted to the jury, and which question was finally decided in the affirmative. Now, after reviewing the transcript of all the evidence, it is apparent that a verdict should properly have been directed in favor of the defendants, and, therefore, any errors which might have occurred in the instructions would be without prejudice."

Plaintiff has appealed to this court, assigning as error the one certain ruling on the evidence and the giving of various instructions which were challenged in the motion for new trial. It will be noted that trial was had before the new Rules of Civil Procedure became effective.

I. The court's holding that, if the defendants' motion for directed verdict should have been sustained, any error in the instructions would be without prejudice, was clearly sound. Paulson v. Hanson, 226 Iowa 858, 863, 285 N.W. 189; Comparet v. Metz Co., 222 Iowa 1328, 1330, 271 N.W. 847; Mulroney Mfg. Co. v. Weeks, 185 Iowa 714, 717, 171 N.W. 36, 37. We are also of the opinion and hold that the court was right in its final determination that defendants' motion for a directed verdict should have been sustained.

The accident herein occurred during the afternoon of May 30, 1942. It was a bright, sunshiny day. Defendant Fabian Gehl, seventeen years old, was driving a 1941 four-door Plymouth with hydraulic brakes. Jacqueline Kauder, age eighteen, was riding in the front seat with him. Plaintiff John Neyens, age eighteen, was in the middle of the back seat. On his left was Peggy Tallman, about eighteen, and on his right John McQuillen, sixteen years old. They were traveling on a graveled road, fourteen to sixteen feet wide, in a westerly direction, approaching a wooden bridge sixteen feet eleven inches wide and sixteen feet seven inches long with a wood railing on each side two feet eleven inches high. Their approach to the bridge was described by plaintiff as follows:

"Q. All of the parties in the car, you were all visiting together I suppose as young folks will, John? A. Yes. Q. You say that Fabian asked you for a cigarette? A. Yes. Q. It was you, yourself, who lighted the cigarette for him? A. Yes. Q. You handed the cigarette up to the young lady in the front seat? A. Yes. Q. Up to this point there had been no difficulty with the car at all had there? A. It had swayed some. Q. Nothing that caused any comment or anything like that? A. No. Q. Nothing out of the ordinary up to this point? A. No. Q. You were the one that lighted the cigarette? A. Yes. Q. And you are the one who passed it up? A. I passed it to the girl, yes. Q. When Fabian had the cigarette in his hand, I think you said it dropped? A. Yes. Q. And as he reached over to pick it up the car swayed, is that correct? A. Yes, and went into the ditch."

The testimony of the other witnesses is in substantial accord with that of plaintiff about the cigarette being lighted by plaintiff, handed to Miss Kauder and then dropped in the process of being handed by her to Gehl, with Gehl reaching down for it, causing the left wheels of the car to get off the highway, with the result that the car struck the south railing of the bridge, turned over and stopped upside down in the ditch about twenty feet from the east piling of the bridge. As to the other details of the accident the testimony is to some extent in

conflict. Of course, we must view it in the light most favorable to the plaintiff.

The jury was warranted in finding that the incident with the cigarette occurred when the car was over one hundred feet from the bridge and that the car traveled for at least one hundred feet with its right wheels on the highway and its left wheels off the highway. This conclusion is supported by the testimony of various witnesses concerning tracks observed after the accident occurred. Leo Green testified as follows:

"These tracks led right up to this abutment, the tracks straddled, one wheel in the ditch and one wheel in the road right on down and it scraped the piling. I traced the tracks back to where they went off the road, they were on the south side of the road, they extended back east 100 feet from where they went into the ditch."

Frederick Rieniets testified:

"The marks extended back into the ditch or little hollow, 100 feet or more."

R. H. Helgers testified:

"On the left-hand side of the road I saw tracks back from the bridge in the grass, on the south side of the road back better than 100 feet east of the bridge in the gutter. * * * There were marks back on the left-hand side of the road, marks in the grass extending back about 100 feet. You could see where they put the brakes on drug along in the grass a ways."

Robert Kurt testified:

"I walked up along the road and saw some tracks in the ditch leading up back onto the road over 100 feet from the bridge."

The bridge was approached down a gradual grade. The testimony of the witnesses and the photographs introduced by both parties show that the road was straight for a distance of approximately four hundred to five hundred feet as the car approached the bridge. The car had been driven on the

graveled road for about one mile before the bridge was struck. Plaintiff testified:

"Q. After you got started on that gravel road, which is about a mile from the bridge, have you an opinion as to how fast that car traveled over that portion to the bridge? A. Yes. Q. In your opinion what was the speed of that car? * * * A. Between 50 and 60 miles an hour."

Defendant Fabian Gehl testified:

"After I turned off on this graveled road and started traveling westerly on the straight away I was going about 40 to 45 miles. This straight away was about a mile. As I approached the first curve there was a slowing down more. At the second curve I was driving about 30 to 35 miles per hour. * * * I asked Mr. Neyens for a cigarette and he lit it and handed it up to the girl in the front seat and she handed it to me, and while handing it to me it was dropped on the front seat. I turned my head and reached over like that to try and recover it and in doing so, took my eyes from the road ahead of me for a second or two. I did not pick up the cigarette. When I turned my head back again after a second or two we were upon a bridge. I never seen that bridge before. Then we wrecked, went down in the ditch and turned over."

John McQuillen testified:

"The gravel was dry, very good. I have driven an automobile for some time. On this straight part of the gravel the car was traveling 40 to 45 miles per hour, as we approached the first curve it slowed down and after he approached the second curve it slowed up more and the car was going 30 to 35 miles per hour. I remember Fabian asking John to light a cigarette for him and John lit it and handed it to the girl in the front seat and she was handing it to Fabian when he dropped it. It dropped on the front seat cushion because Fabian turned around and looked on the seat. He turned his head slightly to the right for a second or two when he was looking for the cigarette and then he looked up and he was just upon the bridge, right on top of it, about 15 feet maybe from the bridge.

From the time he looked up until the accident happened it was a second, just in the same instant."

All of the testimony is that there was no other automobile on the highway. On the question of speed, there was a dispute in the evidence. The jury could have found that the car was traveling between fifty and sixty miles per hour. It is a mathematical fact that a car traveling sixty miles per hour travels eighty-eight feet per second. At fifty miles per hour it travels about seventy-four feet per second. Similarly, at forty miles per hour it would travel about fifty-nine feet per second and at thirty miles per hour, forty-four feet per second. According to plaintiff's testimony as to speed, the incident of the cigarette being dropped occurred less than two seconds before the collision with the bridge. Even as to defendant Fabian Gehl's testimony, the incident occurred about two seconds before the collision. There is no evidence of recklessness before plaintiff handed the cigarette to Miss Kauder. We cannot interpret the conduct of this defendant in the period of approximately two seconds which followed as amounting to reckless operation of an automobile that would support a recovery by plaintiff herein.

In Harvey v. Clark, 232 Iowa 729, 732, 6 N.W. 2d 144, 145, 143 A.L.R. 1141, we held that failure to see a train in time to avoid colliding with it at a crossing did not constitute recklessness, stating as follows:

"To constitute recklessness under the guest statute, conduct must be more than negligent and must manifest a heedless disregard for or indifference to the consequences or the rights or safety of others. It need not involve moral turpitude nor wanton and willful misconduct. Crowell v. Demo, 231 Iowa 228, 230, 1 N.W. 2d 93, 94, and citations. We have frequently said that conduct arising from mere inadvertence, thoughtlessness, or error of judgment is not reckless." (Citing cases.)

In the case of Wilson v. Oxborrow, 220 Iowa 1135, 265 N.W. 1, we held that a driver, who approached a bridge around a ten-degree curve astraddle the black lines in the center of the pavement at forty miles per hour, confining his view to the black lines so that he did not see an approaching truck until seventy-

five feet therefrom and thereupon swerved to the right, sideswiping the truck, resulting in fatal injuries to a guest, was not reckless. In the case of Shenkle v. Mains, 216 Iowa 1324, 247 N. W. 635, the driver failed to observe an approaching car in time to avoid sideswiping it, resulting in fatal injuries to a guest, and we also held that a case of recklessness had not been made out. In Roberts v. Koons, 230 Iowa 92, 296 N.W. 811, the driver failed to observe a parked truck while driving through snow flurries, collided with it, resulting in fatal injury to a guest, and we held that recklessness had not been shown. In Tomasek v. Lynch, 233 Iowa 662, 10 N.W. 2d 3, a driver failed to recognize a T-intersection in time to avoid driving into the ditch, and we reversed the trial court's refusal to direct a verdict on the ground that recklessness had not been shown.

In all of the cases above cited there was some inadvertence, thoughtlessness, or error in judgment which would probably support a claim of actionable negligence, but the evidence failed to show heedless disregard for or indifference to the consequences or rights or safety of others. So it is here. We find no decision of this court that seems to be directly analogous. Decisions from other courts, however, definitely support our position.

In the case of Rindge v. Holbrook, 111 Conn. 72, 74, 149 A. 231, 232, the driver's attention was distracted by the presence of a bee while driving at a high rate of speed, resulting in the car leaving the pavement and colliding with a fence. A verdict for plaintiff was set aside by the trial court. In affirming the case, the court states:

"The marks of the wheels of the car indicated that, from the time it first turned from a straight course until it struck the fence it proceeded about seventy-five feet. The whole evidence shows beyond doubt that the accident was due to the fact that the attention of the defendant was momentarily distracted from the operation of the car because of a not unnatural reaction to the presence of the bee near or on her person. The trial court was right in concluding that the situation could not reasonably be held to disclose a reckless and

heedless disregard by the defendant of the rights of the plaintiff, within the terms of our statute restricting the right of recovery by a guest in an automobile.''

In Lemon v. Hoffmark, 132 Neb. 421, 272 N. W. 214, the driver turned around to get a sandwich from one in the rear seat, causing the car to cross the road into the ditch. A judgment for the plaintiff guest was reversed and the action was dismissed. In Quinlivan v. Taylor, 298 Mass. 138, 10 N.E. 2d 96, the driver, while attempting to clear snow from the windshield with his hand, hit a safety island. A directed verdict for defendant was affirmed. In Black v. Neill, 134 Neb. 764, 279 N.W. 471, the driver turned his head to point out a tree which had been blown down upon a porch, ran past a stop sign, suddenly applied his brakes, throwing forward a passenger and injuring her. The court held that the guest could not recover.

Plaintiff relies upon Fraser v. Brannigan, 228 Iowa 572, 293 N.W. 50; Mescher v. Brogan, 223 Iowa 573, 272 N.W. 645; and Reed v. Pape, 226 Iowa 170, 284 N.W. 106. The facts in each case were very different from those before us herein. In each of those cases there was evidence of a persistent course of conduct which manifested a heedless disregard for or indifference to the consequences or the rights or safety of others. None of the cases relied upon by plaintiff presented a situation such as we have here of a sudden, isolated act of inadvertence, thoughtlessness, or error of judgment.

Since the court correctly held that the motion for directed verdict should have been sustained it is not necessary for us to discuss or decide the assignments of error which are based upon objections to the instructions to the jury.

II. The only other assignment of error asserts:

''The court erred in striking the testimony of Witness Rieniets that defendant's car was going over 65 miles an hour when it passed his place .8 of a mile from the scene of the accident, and erred in sustaining the offer to introduce said testimony on rebuttal.''

We find no merit in the contention.

Of course, we cannot reverse on a ruling on evidence unless prejudice appears. Ceretti v. Des Moines Ry. Co., 228 Iowa

548, 551, 293 N.W. 45, and cases cited. The evidence shows without dispute that two curves were negotiated after the car passed Rieniets' home and before it struck the bridge. The only testimony in the record that relates thereto is that defendant slowed down for each curve. The claimed acts of recklessness were confined to the operation of the car after the car had passed both curves. The evidence of Rieniets was thus rendered remote. In Thomas v. Charter, 224 Iowa 1278, 1281, 278 N. W. 920, 922, error was predicated upon the exclusion of testimony as to the speed of a motorcycle seven hundred feet from the point of collision. In affirming the case, we stated:

"The trial court has considerable discretion in determining whether or not evidence as to speed at points more or less remote from the point of a collision should be admitted, and, where there is nothing in the question to indicate that the speed at a point some distance from the point of a collision has some connection with the speed at the point of collision, the trial court's ruling will not be disturbed."

We are satisfied that there was no such abuse of discretion herein as would warrant or require a reversal of this case.

By reason of the foregoing, the cause is—Affirmed.

All JUSTICES concur.