JULIUS HOWARD SORENSEN, APPELLEE, V. GRAND ISLAND CLINIC ET AL., APPELLANTS.

FILED JANUARY 15, 1930. No. 27011.

*Prince & Prince* and *H. A. Bryant,* for appellants.

*Fradenburg & Matthews* and *Mayer, Kroger & Mayer,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and DINEEN, District Judge.

ROSE, J.

This is an action to recover $50,000 in damages for malpractice. Julius Howard Sorensen, called "Howard" in the record, a boy 14 years of age, by his father, Samuel K. Sorensen, as guardian, is plaintiff. The Grand Island Clinic, a corporation, is a defendant. Winfred Woodworth Arrasmith and William H. Hombach, members of the Clinic, are the other defendants. Arrasmith and Hombach are regular practitioners of medicine and surgery at Grand Island.

Evidential facts about which there is no dispute may be summarized as follows: Between 5 and 6 o'clock in the evening, Saturday, February 11, 1928, "Howard" and a number of other boys were playing ball in a vacant lot adjoining the home of E. E. Farnsworth, a physician and surgeon, secretary and treasurer of the Clinic, and a resident of Grand Island. While Farnsworth was watching the game from a sidewalk at his residence, Howard was pushed by one of the other players and, to protect his body from the violence of a fall, struck the ground with the palm of his left hand, breaking the ulna and the radius of his left forearm at the junction of the middle and upper third. He went immediately to Farnsworth who, at his house, attempted to set the broken bones. Failing to do so with

the means at hand, he promptly took the patient in an automobile to the Clinic, called the boy's father and turned the case over to Arrasmith, who took charge about 6 o'clock the same evening, left the boy in a room at the Clinic, went for a lunch, returned, directed a nurse to administer gas, which was given, and attempted without success to reduce the fractures by manipulation and extension. Without delay the patient was taken to another room in the Clinic, where an X-ray machine was used and where the fractures were examined with a fluoroscope, an instrument employed in observing shadows cast by objects in the path of the X-rays. While the boy was again under the influence of an anæsthetic, ether having been given, Arrasmith, observing the broken bones through the fluoroscope, devoted 15 or 20 minutes to a further attempt to reduce the fractures by manipulation and extension. In this manner the fracture of the ulna was reduced. The broken ends of the radius were also put in apposition, but did not stay in place. Immediately thereafter Howard was taken to the St. Francis Hospital at Grand Island, again anæsthetized with ether and put on an operating table. Arrasmith made an open incision over the fracture of the radius, exposed the bone, drilled a hole through each of the broken ends, sewed them together with catgut, closed and dressed the wound, and encased the arm from a place above the elbow to the fingers in a rigid circular cast of plaster of Paris. The operation was completed about 11 o'clock in the afternoon on the day of the accident—Saturday, February 11, 1928. Howard spent the night in the hospital. Arrasmith called to see him there about 10 o'clock the next morning, Sunday, outlined a window in the plaster of Paris cast over the incision, and authorized the boy to go home at 3 o'clock in the afternoon of the same day. After the window outlined had been cut, Howard went home at the appointed time. Neither Arrasmith nor any one else representing him or the Clinic saw the boy until 1 o'clock in the afternoon on the following Tuesday, when he returned to the Clinic with his broken arm gangrened below the elbow. Arrasmith removed the rigid cast of plaster of Paris and

directed treatments to restore circulation in the arm below the fractures. The means employed were futile and the patient was returned to the hospital, where treatments to restore circulation were continued without success from Tuesday evening until the following Thursday. During the afternoon Arrasmith in his automobile took Howard to Lincoln, where J. E. M. Thomson and H. W. Orr, physicians and surgeons, amputated the broken arm above the elbow.

From plaintiff's standpoint, negligence in a number of particulars was pleaded at great length, and, as fully as necessary for the purposes of review, will be stated in connection with an assignment of error. In the answers of the Grand Island Clinic and Arrasmith, the history of the case and the details of the operation and treatment, as viewed by defendants, were pleaded with great particularity. They also pleaded skill, proper surgery, and careful treatment, and denied the negligence charged. Hombach adopted the answers of the other defendants and alleged further that his only connection with the case was his assistance in taking the X-ray pictures. The reply to the unadmitted allegations of the answers was a general denial.

Upon a trial of the issues the jury rendered a verdict in favor of plaintiff for $8,000. From a judgment therefor defendants appealed.

One of the assignments of error is directed to the proposition that the trial court erred in submitting to the jury many issues of negligence pleaded in the petition but having no support in the evidence. The criticism is aimed at instructions in which the district court summarized what the parties alleged in their respective pleadings, regardless of proofs. In the petition and in the answers lengthy and unnecessary allegations were inserted. The trial court in a somewhat abbreviated form recited plaintiff's allegations, making it clear that they were from the petition. The allegations in the answers were treated in the same manner. Following the recital of allegations from the petition and answers and restated in the instructions, the jury were told that, in substance, they were the issues rais-

ed by the pleadings. The issues, however, that the jury were required to consider were stated in an instruction as follows:

"You are instructed that the pleadings and claims of the parties in this case may be briefly summarized as follows: The plaintiff claims that the defendants were careless and negligent in the method adopted for the setting of his broken arm and were negligent and careless in the manner in which they set said arm and the care and attention given him after the arm was set and that said negligence and carelessness was the direct and proximate cause of the loss of his said arm whereby he has been damaged. The defendants deny that they were negligent or careless in any of said particulars and that they used due care, caution and skill in the method employed to set said arm and in manner in which said arm was set and in the care and attention given the plaintiff thereafter. These are briefly the issues which you are to consider in this case and in considering these issues you must be governed by the evidence in the light of the following rules of law. You cannot consider any acts of negligence except such as are set out in the petition."

While this quoted instruction did not conform to correct standards of English, it stated the only issues on which there was evidence and limited the jury to a consideration thereof. For days the testimony of specialists in surgery and of others was directed to those identical issues. There is nothing to indicate that the jury misunderstood them. Any juror fit for service would comprehend what he was required to determine under the instruction quoted and that he was limited to evidence on the issues submitted for the consideration of the jury, though other issues may have been raised by the pleadings. On this phase of the appeal the point is that issues of negligence on which there was no evidence in favor of plaintiff were erroneously submitted to the jury. The determination of this question required a critical examination of more than 500 pages of testimony, much of it technical in character. After performance of this judicial task, the conclusion is that every

issue of negligence submitted to the jury by the instruction quoted is supported by sufficient evidence and that the evidence as a whole sustains the verdict and judgment in favor of plaintiff.

Defendants contend also that the trial court erred to their prejudice in requiring Arrasmith as a witness to answer the following question: "Do you carry insurance protecting you against claims of this kind?" To that question the witness answered "I do."

The ruling of the court below was authorized by a rule of evidence adopted by the supreme court in *Jessup v. Davis,* 115 Neb. 1, 56 A. L. R. 1403, Good, Rose and George A. Day, JJ., dissenting. The rule thus announced, though at variance with the opinions of most of the courts in other jurisdictions, has never been judicially overruled or changed by legislation. It was therefore binding on the district court. In following the rule adopted by the state court of last resort the district court did not err.

Defendants insist further that the trial court erred in refusing to give a requested instruction, but the point is not well taken for the reason that a correct instruction given contained in a different form the substance of the one requested and refused.

Error prejudicial to defendants has not been found in the record and consequently the judgment below is

AFFIRMED.