ESTHER JENNINGS, APPELLEE, V. FRANK BIURVALL, APPELLANT.

FILED FEBRUARY 11, 1932. No. 28088.

Crofoot, Fraser, Connolly & Stryker, for appellant.

B. J. Boyle and Wear, Moriarty, Garrotto & Boland, contra.

Heard before Goss, C. J., EBERLY and PAINE, JJ., and BEGLEY and ELDRED, District Judges.

PAINE, J.

The plaintiff and appellee, Esther Jennings, brought an action for personal injuries against Frank Biurvall, the defendant and appellant, who was driving an automobile which plunged off the road and into a gully about two miles northwest of Hinton, Iowa, on Saturday evening, January 17, 1931. The case was submitted to a jury, which returned a unanimous verdict for $3,000 upon May 28, 1931, for which amount a judgment was entered, and motion for new trial overruled.

The evidence in this case discloses that, at the time of the accident, the appellee, an emancipated minor, 19 years of age, was a stenographer in the Federal Land Bank at Omaha, earning $65 a month; that the appellant secured

the Viking sedan, in which they were riding, from his father, Adolph Biurvall, its owner, who died before the trial, and started from Omaha at about 3:00 p. m. on a week-end trip with the appellee, Esther Jennings, and Grace Kathan, who were roommates, who went as his guests, paying none of the expenses. They planned to go to Beresford, South Dakota, to visit the mother of the appellee. They reached Sioux City in three hours, and in leaving there got off the main highway by mistake.

All three of the parties were riding in the front seat, and were proceeding on a dark night, at about 6:30 in the evening, on a strange, unmarked and unimproved country cross-road, over which none of the parties had ever driven before, and which appellant admitted at the trial was the hilliest road coming out of Hinton that he had ever driven over, having in addition a number of turns in it. Appellant remarked at the time that they would have to hurry to reach Beresford at the time they had planned to get there, and the appellee looked at the speedometer and noted that they were driving 55 miles an hour, and immediately told the appellant that there was no need to hurry, that her folks would be there when they got there. The appellant replied that there was no danger, but diminished his speed slightly. They passed a Ford coupé going in the same direction, and the testimony of the father and two sons, named Schuttpelz, in the Ford was that the appellant was driving 40 to 45 miles an hour when he passed their car, which was within a quarter of a mile of a sharp turn, with a bridge just beyond; that the rails on the bridge were painted white, and while the car was being driven at about 50 miles an hour, Miss Kathan, seeing the bridge from 150 to 300 feet ahead, shouted, "My God! Frank, be careful." Appellant testifies that with his hydraulic brakes he could have stopped the car, going at that speed, in 30 feet, but he paid no heed and disregarded the warning entirely. The testimony discloses that the appellant, just before crashing through the guard-rail leading to the bridge, dropped his hands from the steering

wheel, and the car went through the guard-rail, which was a bridge plank 3 inches thick by 12 inches wide and 16 feet long, and down into a gully about 20 feet deep, turned over, headed in the opposite direction, and was nearly demolished. The farmers in the Ford car, upon arrival at the scene of the accident a moment later, found appellant crawling out and the two girls in the top of the car, which was upside down. They took all of the parties to the St. Joseph hospital in Sioux City. When asked in the hospital why he dropped his hands from the steering wheel, the appellant answered by saying that he had always heard that a baby didn't get hurt in an accident because it was relaxed, and therefore he dropped his hands and relaxed his body, without attempting to put on the brakes or slow down the car.

The appellee remained in the hospital in Sioux City for ten days, was then taken to her mother's home in Beresford, South Dakota, and upon returning to Omaha she attempted to return to her work as stenographer, but a few days later she fell over in a faint while at her work. She then placed herself under the care of Dr. Herman Johnson, of Lord, Schrock & Johnson, orthopedic specialists. They treated her at St. Catherine's hospital, applied traction to her head and neck, secured a neck-brace for her, which she wore for some time, but when she removed the brace the pain was so severe that she had to continue its use, and was wearing it during the trial. Her most serious injury was an injury of the neck vertebræ, near the base of the skull, which made an irritation to the spinal cord, because of which injury she was compelled to wear the neck-brace, and suffered great pain. In addition to this, she had an injury to her right leg, which remained more or less numb for ten days, and in which the reflexes were affected, due to nerve trouble. She was troubled with severe pains and headaches, but Dr. Johnson was not able at the time of the trial to tell whether her injuries would be permanent or not. In addition to her pain and suffering, plaintiff suffered the loss of all garments she had on,

which were ruined by battery acid, the loss of her handbag, with $15 in cash, and other financial losses for hospital and doctor bills made her total expense up to the time of the trial amount to $700.

1. The assignments of error set out by appellant are as follows: (1) That the court refused to give a directed verdict; (2) that the court admitted improper evidence over defendant's objection; that the appellant was being defended by attorneys employed by an insurance company; (3) that the court erred in refusing to give instruction No. 3 offered by the appellant, which defined the word "reckless;" and (4) that the damages awarded by the jury are excessive.

The second assignment of error is directed to evidence which was brought out in the direct examination of the witness Grace Kathan. She was asked whether the appellant had ever given her any directions after the accident, and she replied that he had given her a slip of paper with Attorney Connolly's name on it and told her she was to see Mr. Connolly. "Q. Did he tell you who Mr. Connolly was? A. Yes. He said he was the claim agent for the insurance company, and I was to talk to him for a settlement." Motion was made by Mr. Connolly to strike out the answer on the ground that it was incompetent, irrelevant and immaterial, and given for the sole purpose of prejudicing this jury against the defendant, upon which Judge Redick made the following ruling: "I will strike it out, and the jury will pay no attention to that testimony; it is improper; I supposed it was for an admission of the defendant."

This court has held that it is permissible in a personal injury suit to inquire of the defendant upon cross-examination as to whether or not he carries liability insurance, and whether he personally employed the attorneys for the defense. *Miller v. Central Taxi Co.*, 110 Neb. 306; *Jessup v. Davis*, 115 Neb. 1; *Sloan v. Harrington*, 117 Neb. 809; *Sorensen v. Grand Island Clinic*, 119 Neb. 280; *Combs v. Owens Motor Co.*, 121 Neb. 5. This is for the sole pur-

pose of informing all parties as to the true status in reference to these matters. Until modified, it is binding upon the trial court. But this court has not enlarged the rule as first laid down, and when it is violated a reversal followed, as in *Lewis v. Beckard*, 118 Neb. 533. The ruling of the trial court in striking out evidence in reference to liability insurance not warranted by the rule is approved.

2. The assignment of error based upon the refusal of the trial judge to give a long instruction defining recklessness can only be clarified by setting out instruction No. 4 given by the trial judge, which reads as follows:

"The jury are instructed that the accident in question occurred in the state of Iowa, and the rights of the parties are governed by the laws of that state as set forth in the pleadings. The statute of Iowa provides as follows:

" 'The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle.'

"It is not claimed that the defendant was intoxicated; the only ground of recovery alleged by plaintiff is that she suffered the injuries of which she complains because of the reckless operation by defendant of the automobile at or about the time of the accident.

"With regard to this term 'reckless' in the statute, you are instructed that it was the evident intention of the legislature to exempt the driver of an automobile from liability for injuries suffered by the guest because of ordinary negligence of the driver and permit his recovery only when such injuries were the result of recklessness (or intoxication). It is therefore necessary to distinguish between negligence and recklessness in the determination of this case. Negligence is the doing of some act under the circumstances of the accident that an ordinarily prudent person would not have done, or the failure to do some act

or to take some precaution which a person of ordinary prudence would have done or taken. Recklessness is heedlessness, or indifference to the rights of others or of the consequences of one's acts; it signifies the driving of an automobile carelessly and heedlessly in a reckless disregard of the rights of others, or of the consequences.

To constitute reckless operation of an automobile, there must be such heedless rashness of conduct as manifests indifference to the consequences to the life, limb, health or property of another. All of these elements are contained within the instruction of the trial court. Admitting that the instruction submitted contains nothing improper, yet the trial court is not bound to give a long instruction submitted if he has covered its main points in one of his own. We have held in another case involving this Iowa guest law that whether the reckless operation of an automobile caused injuries to a passenger is a question for the jury to determine. *Graham v. Higgins,* 121 Neb. 211.

The finding of gross negligence which made a motorist liable for injuries to a guest has been held warranted by excessive speed and driving in a zigzag manner. *Smiddy v. O'Neil,* 177 N. E. (Mass.) 809.

The defendant acted in such utter disregard of the dictates of prudence as amounted to a complete neglect of the safety of his guests and warranted a finding that the accident and injury were caused by the defendant's gross negligence. *Cole v. Morse,* 155 A. (N. H.) 694.

All of the facts in the case at bar, the speed of this car over an unknown, unmarked country road, which was hilly and had many turns, driving after dark, approaching a sharp turn, not banked, with a bridge immediately beyond, without slackening speed, the wrecking of the car, the injuries sustained, all these facts were submitted to the jury under proper instructions, and the verdict of $3,000 returned by the jury is sustained by the evidence, and the same is hereby

AFFIRMED.