JOSEPHINE BARNARD, SPECIAL ADMINISTRATRIX, APPELLEE,
V. OSCAR G. HEATHER, APPELLANT.

282 N. W. 534

FILED DECEMBER 9, 1938. No. 30426.

*Crofoot, Fraser, Connolly & Stryker,* for appellant.

*McKenzie & Dugan, contra.*

Heard before ROSE, C. J., PAINE, CARTER and MESSMORE, JJ., and LANDIS and KROGER, District Judges.

MESSMORE, J.

This action was brought in the district court for Douglas county to recover damages for the death of plaintiff's intestate, alleged to have been caused by the reckless operation of the automobile of defendant in which plaintiff's intestate, her husband, was riding. The jury returned a verdict for the plaintiff in the sum of $3,250. Defendant appeals.

The pleadings admit the appointment of the plaintiff as the administratrix of her husband's estate, the accident, and the place at which it occurred. The pertinent allegations of plaintiff's amended petition relating to the cause of action may be summarized as follows: That the accident was due to gross negligence and reckless driving of the automobile by the defendant, in the matter of speed, management and control of his automobile, in attempting to pass

an automobile going in the same direction, and at the same time an automobile approaching from the opposite direction; in attempting to pass between the two automobiles, running in opposite directions; in failing to remain on the right-hand side of the road and properly control the automobile and keep careful and proper lookout; and in failure to see the automobile coming from the south towards the north, or the oncoming automobile, and in driving in a reckless and careless manner, in utter disregard of the safety of other persons having occasion to use the highway. Pertinent provisions of the Iowa Code are set out in the amended petition and later received in evidence.

The second amended answer of the defendant cites the guest statute (Iowa Code 1935, sec. 5026-b1), and alleges that the plaintiff's intestate was riding in defendant's automobile as a guest, by invitation and not for hire, as such statute has been construed by the supreme court of Iowa. The answer further denies that the accident was caused by any reckless operation of the automobile, as has been defined by the law of Iowa, or by any violation of the Iowa statute. The reply is a general denial.

On September 11, 1936, the defendant, Oscar G. Heather, the plaintiff's intestate, Ray O. Barnard, and one Hans J. Hansen left their homes in Omaha at 3:15 a. m. to go to Alexandria, Minnesota, on a fishing trip. The defendant was driving his 1934 Studebaker sedan. Seated at his right was the plaintiff's intestate, and Mr. Hansen was in the rear seat. The accident occurred about 7:45 in the morning on highway No. 75, a paved highway 18 feet wide, with seven-foot dirt shoulders, being the main highway from Sioux City, Iowa, to Minnesota, running directly north. The country is rolling, but the hills are not steep. The weather was clear and dry and the visibility good.

The most competent evidence relating to the accident is the testimony of John Beernink, a farmer, who was an eyewitness of the accident. Mr. Beernink lived about four miles southwest of Sioux Center, Iowa. On the morning of

September 11, 1936, he was driving his Ford V-8 automobile towards Sioux Center, going north and down-hill. The road leads downgrade several hundred feet to the bottom, and then starts upgrade. Mr. Beernink was driving at the rate of 40 miles an hour on the east side of the road. When about a mile and a half south of Sioux Center he saw a car coming from the north. Defendant's automobile was coming from the south, and was not noticed particularly by the witness until it was practically alongside of his Ford car. There was nothing unusual about the car and it was not making any noise. The automobile approaching from the north was at that time 75 to 100 feet from the Ford car. The defendant's car cut in sharply in front of the Ford car to avoid the car coming from the north; otherwise there would have been a head-on collision with the southbound car. The right rear fender of the Studebaker struck and dented the left front fender of the Ford car, jarring it slightly. Defendant's automobile then proceeded onto the shoulder on the east side of the highway, after swinging in front of the Ford car, and on making the turn to the east side of the road it continued to go north, its right wheels being from a foot to two feet off the paving, following the shoulder of the road on the east side for 30 or 40 feet. Defendant's car then swung over to the west side diagonally across the paving 40 or 45 feet. It upset in a ditch and rolled over two or three times. The speed of defendant's car was fixed by the witnesses at 35 or 40 miles an hour; the speed of the oncoming car from the north and of the Ford car at 40 miles an hour. The evidence further discloses that, at the time Mr. Beernink noticed defendant's car and the driver's attempt to go around the Ford car, Beernink tried to momentarily slacken his speed, in an attempt to slow down, to make more room for the Studebaker to pass in front of the Ford. The oncoming car from the north apparently did not slacken its speed; nor is there any evidence that the brakes were applied on any of the cars. Mr. Beernink could plainly see that defendant first tried to prevent the accident by

cutting in at his right and then made an effort to control the car and get it back onto the pavement. The driver of the southbound car and the driver of the Ford then went to the scene of the accident. No one in defendant's car said anything about how the accident happened. The driver of the southbound car left, and his evidence was never obtained. The plaintiff's intestate received a broken neck in the accident and died some 20 minutes thereafter in a hospital at Sioux Center.

The testimony of the sheriff, who arrived at the scene of the accident about 8:30 a. m., showing the course traveled by the defendant's car and its position on the road, would add nothing of particular advantage to the evidence, as no definite measurements were taken. The testimony of defendant discloses that he could see a mile and a half ahead, and certain portions of his testimony are set out by plaintiff, to the effect that the defendant did not pass any cars that he knew of; he did not see any car that he knew of before the accident happened or at the time of the accident; did not see or meet any cars; that he could not recall how he happened to go off the left-hand side of the road, and before the crash did not see anybody coming towards him; did not see a car between himself and the end of the mile and a half distance; that the view was clear; he did not know what occurred; did not recall seeing the Ford car ahead of him or any car from the north, and did not know how the accident happened. Defendant also testified, in substance, that he was not able to reconstruct in his mind all that happened; that he had tried to do so, and that he could not bring the happening of the accident or any of the events occurring at the time back to his mind; that he did not recollect seeing the car approaching him. There is also in the record evidence that defendant had no recollection of the accident. He was injured; the accident occurred in less than a second's time, and there is nothing unusual in defendant's testimony that he could not recall just what happened, when he was stunned a few moments after the accident. He had driven an automobile for 17 years.

The evidence of Hans J. Hansen is of little value as it relates to the accident. He was engaged in looking over road maps in the rear seat. One statement is attributed to this witness, when he said "Oscar, he got you," perhaps referring to the fact that he thought defendant's car had been sideswiped either by the southbound automobile or by the Ford car.

The town marshal of Sioux Center testified that he talked to the defendant; that defendant stated he was going at a rate of speed of 28 miles an hour. The witness testified: "Q. What else did he say? A. Then he said he passed a car that was ahead of him and turned in to the right to avoid a car coming from the north." On cross-examination the witness testified: "Q. He told you everything he remembered about the accident? Did he say anything about his car being sideswiped? A. He mentioned to me it looked like the car coming from the north sideswiped him. Either the northbound car or southbound car sideswiped him, was his idea." The foregoing facts, as disclosed by the record, are sufficient for an analysis of the instant case.

The appellant contends that the trial court erred in overruling defendant's motion for a directed verdict at the close of all the evidence.

Section 5026-b1, Iowa Code 1935, reads: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle." That part of this statutory provision relating to intoxicating liquor is not involved in this case.

In *Siesseger v. Puth*, 213 Ia. 164, 182, 239 N. W. 46, 54, "Recklessness" under the guest statute is defined as " 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' with-

out being 'wilful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' " 'The above case has been approved in *Neessen v. Armstrong,* 213 Ia. 378, 239 N. W. 56; *McQuillen v. Meyers,* 213 Ia. 1366, 241 N. W. 442; *Wilde v. Griffel,* 214 Ia. 1177, 243 N. W. 159; *Levinson v. Hagerman,* 214 Ia. 1296, 244 N. W. 307; and in every Iowa decision touching upon the guest statute, wherein the word "reckless" was necessary to be defined.

In *Mescher v. Brogan,* 272 N. W. (Ia.) 645, it was held: " 'Recklessness' is conduct amounting to more than negligence and surrounding circumstances in each particular case must be considered in determining the question;" that, "In Iowa, there are no degrees of negligence;" and that the "Rule that 'recklessness,' within automobile guest statute, is more than negligence, means that recklessness is more than want of ordinary care, and does not necessarily mean that recklessness is conduct which transcends or goes beyond what is considered gross negligence in states recognizing degrees of negligence."

In the instant case there is no evidence of excessive speed on the part of defendant in driving his Studebaker sedan. The car coming from the north, 75 to 100 feet in front of the Ford car, or approximately the same distance in front of the Studebaker car, required the driver of the Studebaker to use that degree of care in an emergency as would be required of an ordinarily prudent man, under the circumstances, to avoid the accident. This the evidence discloses defendant sought to do, and elected to turn his car to the right in front of the Ford car. As a consequence, the car coming from the north went on, apparently untouched. The Ford car was jarred slightly. The defendant was probably guilty of negligence. At most, he might have been guilty of exercising poor judgment under the circumstances.

In the case of *McQuillen v. Meyers, supra,* it was said (p. 1368) : "The court defined negligence, but charged that

the term 'recklessness' is a stronger one than negligence or want of reasonable care; that it indicates an indifference to consequences, a willingness to take a chance when there is present a perception of danger, and in the operation of an automobile signifies the driving of the car in heedless disregard of consequences; that it does not mean momentary thoughtlessness, inadvertence, or error in judgment." And in the case of *Wilde v. Griffel,* 214 Ia. 1177, 243 N. W. 159, the court, speaking of the guest statute, said (p. 1180):

"The evidence must disclose something from which recklessness could be legitimately inferred, and as the trial court said in his finding:

" 'If the only thing you can infer from the evidence is negligence, then the court should not submit the question to the jury. * * * It seems to me as if this statute, if it means what it says, means that the plaintiff must show some act as would be pronounced by every person as an utter indifference to the safety of the guest in his car.' "

Defendant cites the case of *Brown v. Martin,* 216 Ia. 1272, 248 N. W. 368. In that case three railroad men were on a hunting trip, riding in a Studebaker sedan. The plaintiff was in the seat next to the driver, and one man was in the rear seat. They left the paved highway, went onto a graveled road; the car immediately began to swerve, finally landing in a ditch. In the opinion the case of *Siesseger v. Puth, supra,* was quoted with approval, the court adding (p. 1276): "In this opinion it was also held that recklessness, within the meaning of the statute, was not a degree of negligence, but was something entirely beyond and distinct from negligence." And at page 1286 it was said: "Even if it may be said that the defendant should have reduced the speed of his car more than he did before going upon the graveled highway, there is nothing to show his failure to do so amounted to anything more than an error in judgment, and, regardless of the consequences, a mere error in judgment amounts to no more than negligence and is not recklessness."

We believe that the facts and circumstances in the case

at bar show that the defendant was not guilty of reckless driving, within the contemplation of the Iowa guest statute (Iowa Code 1935, sec. 5026-b1), and as determined by the decisions of the Iowa supreme court herein cited.

Plaintiff cites the case of *White v. Center*, 218 Ia. 1027, 254 N. W. 90, on the proposition: "Where a motorist collides on a paved highway with a wagon moving in the same direction in which he is going and which was plainly visible for a quarter of a mile, he may be held liable for reckless operation for injuries sustained by one riding with him as a guest;" and on the further proposition: "Where a motorist drives his automobile into an object upon the highway, which is visible for at least a quarter of a mile, he is guilty of reckless operation" of his automobile.

In the above-cited case the driver was on a straight, level stretch of a paved road on the right-hand side thereof, and could see in the road ahead of him, for at least a quarter of a mile, a team and wagon with a load of corn. He operated his car at a speed of 70 miles an hour and crashed into the rear of the wagon. The circumstances of this case presented a question for the jury of reckless driving and show a different situation than exists in the case at bar. There was no emergency in the *White* case as was presented in the instant case.

The case of *Bowermaster v. Universal Producing Co.*, 221 Ia. 831, 266 N. W. 503, wherein a judgment was reversed and the reason for reversal was testimony tending to establish recklessness, when tested in the light of the admitted physical facts and verities revealed in the record as not being true, conceding the plaintiff's right to the benefit of the most favorable view of the evidence rule, is of no assistance to the plaintiff in this case. The facts in the case of *Hart v. Hinkley*, 215 Ia. 915, 247 N. W. 258, are not analogous to the facts in the instant case; nor was the situation in any degree the same, which is also true of *Szetela v. Abramowicz*, 118 Conn. 697, 172 Atl. 852.

Plaintiff cites *Sanford v. Grady*, 1 Cal. App. (2d) 365, 36 Pac. (2d) 652, and *Goss v. Overton*, 266 Mich. 62, 253

N. W. 217, on the proposition of law: "A motorist may be guilty of reckless operation where he attempts to pass a car ahead when a third one is approaching from the opposite direction at close proximity."

In *Sanford v. Grady, supra,* the facts and circumstances disclose a determined effort on the part of the driver, who was passing a truck, traveling at the rate of 45 miles an hour, sounding his horn, and increasing his speed, to cut in quickly and run parallel with the truck, knowing that there would be an accident, and stating that it would be easier for the other car to pull out on the dirt than it would be for him to go around the rear of the truck, and not giving ground, and knowing that another car might possibly be coming up the hill, and plunging directly into the approaching car. This case presents a distinctly different state of facts than those in the case at bar.

In *Goss v. Overton, supra,* it was held: "Motorist is guilty of wilful and wanton misconduct where he drove car at speed of approximately 60 miles per hour over road with which he was very familiar and knew had been recently covered with loose gravel and struck telephone pole at curve he was unable to negotiate in his effort to avoid road scraper raising dense cloud of dust beyond which he could not see, and therefore trial court did not err in denying motion for judgment *non obstante veredicto* for guest passenger." We believe that a further statement of the case is unnecessary, in view of the circumstances presented in the case at bar.

The trial court was right in not submitting the proposition of a joint enterprise to the jury. There is some evidence that the deceased purchased seven gallons of gasoline at LeMars, and some evidence that the three men were to pay their equal shares of the expenses on the fishing trip. There is no further evidence as to a joint enterprise. The deceased was a guest of the defendant at the time of the accident, within the meaning and contemplation of the guest law of the state of Iowa. See *Clendenning v. Simerman,* 220 Ia. 739, 263 N. W. 248; *Park v. National Casualty*

*Co.*, 222 Ia. 861, 270 N. W. 23; *Sullivan v. Harris*, 276 N. W. (Ia.) 88; *Askowith v. Massell*, 260 Mass. 202, 156 N. E. 875; *Reed v. Bloom*, 15 Fed. Supp. 600.

In the case of *Wion v. Hayes*, 220 Ia. 156, 261 N. W. 531, the court said (p. 161): "At the same time it was the duty of the district court to apply the doctrine adopted by this court, that a scintilla of evidence is insufficient to call for the submission of a case to the jury. *In re Estate of Work*, 212 Ia. 31, 233 N. W. 28. In *Schmidt v. Hayden*, 205 Ia. 1369, 219 N. W. 399, this court said: 'The direction of a verdict, in its last analysis, is always a question of the sufficiency of the evidence.'"

The trial court should have directed a verdict in favor of the defendant at the conclusion of all the evidence. The judgment is therefore reversed, and the cause dismissed.

REVERSED AND DISMISSED.