JAMES M. YANNEY, ADMINISTRATOR OF THE ESTATE OF WADIA YANNEY, DECEASED, APPELLEE, v. THOMAS NEMER, · APPELLANT, ROLAND C. CROSS ET AL., APPELLEES.

47 N. W. 2d 368

Filed April 12, 1951. No. 32926.

*Wear & Boland,* for appellant.

*Beynon, Greenamyre & Hecht, Donovan, Frohm & Bolus,* and *Gross, Welch, Vinardi & Kauffman,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages. Plaintiff's intestate was injured and died as the result of a collision between a car and a truck. The defendants are Thomas Nemer, owner and driver of the car; the owners of the truck, individually and as members of a firm; and the driver of the truck. Issues were made and trial was had. The jury found for the plaintiff and against the defendant Nemer. The jury found for the other defendants. Defendant Nemer appeals. We reverse the judgment of the trial court and remand the cause with directions to enter judgment for the defendant Nemer.

The accident happened in Iowa. The action is brought under the Iowa guest statute.

The plaintiff's intestate was a sister of the defendant Nemer. She was riding in the Nemer car as a guest of defendant Nemer. We will refer to her as the guest. We refer to defendant Nemer, so far as the testimony is concerned, as Nemer. We will refer to his car as the car. We refer to the vehicle of the other defendants involved in the action as the truck.

At the close of plaintiff's case-in-chief and again at the close of all the evidence, motions were made by defendant Nemer for a directed verdict or a dismissal as to him. These motions were overruled, and the

cause was submitted to the jury with the result above indicated. Defendant Nemer then moved for judgment notwithstanding the verdict and likewise moved for a new trial. These motions were overruled.

The sole question presented here is whether or not the court erred in overruling these motions.

It appears from the record that Nemer testified as a witness at the coroner's inquest involving this accident. His deposition was taken by defendants (other than Nemer) in March 1950. The trial was in May 1950. References were made in the deposition to questions and answers of Nemer at the coroner's inquest. Parts of the deposition were received in evidence for the plaintiff as admissions against interest. Other parts were received when offered as cross-examination by defendant Nemer. Nemer then was called and testified as a witness for the plaintiff. He was not called as a witness for himself or the other defendants.

The evidence is in confusion and conflict. This much is fairly definite. The accident happened about 8 miles west of Oakland, Iowa, and about 35 miles west of Atlantic, Iowa, around 4 p. m., on May 3, 1948, on U. S. Highway No. 6. The highway is paved with asphalt over concrete. It is 18 feet in width with a visible line in the center. On either side are dirt shoulders 8 to 10 or 12 feet wide, not newly made, and beyond that a ditch possibly a foot in depth. The highway runs in an east-west direction and crosses a series of hills. At the point of the collision there is a cut with a steep bank on the south side. Toward the west, at a distance fixed by one witness as 220 yards from the crest of the hill on which the accident occurred, there is a cross road running north and south. Toward the east on the north side of the road and beyond the crest of the hill is a filling station.

It had been raining before the accident. Nemer testified that it rained from Atlantic west. Whether it was raining slightly or at all when the accident hap-

pened is in dispute. It rained more thereafter. In any event, the paved surface was wet and slippery. The shoulders were wet, muddy, and slippery. There is no evidence as to limited visibility.

There is evidence as to mud. A highway patrolman who reached the scene of the accident shortly after it happened testified that the filling station was 600 feet east of the crest of the hill; that cars driving from the station had carried mud out on the pavement west 200 or 300 feet, making a slippery surface on the pavement on the north side; and that he couldn't say that the mud went clear to the crest of the hill. A witness called by the defendants, other than Nemer, testified to spots of mud dropped by cars on the pavement to the west of the crest of the hill, but did not testify more definitely as to number or location.

The Nemer car was a 4-door sedan. The truck was a single unit type with a body 8 feet wide and loaded with more than 5 tons of cargo. There was another car, described in the evidence as a blue car.

Just before the accident the truck was proceeding east and going uphill at an undisputed speed of 20 miles an hour. The blue car was proceeding west at a speed of 20 miles an hour, the driver intending to turn and go south on the cross road.

Nemer testified that when he left Atlantic to go to Omaha the guest was riding in the front seat on his right side. Two brothers were in the rear seat and somewhere in the car there was a young son of the guest. Nemer testified by deposition that he drove 75 to 80 miles an hour from the time he left Atlantic until the accident and that he was in a hurry to get to Omaha; that when they left Atlantic his sister asked, "What are you going so fast for, you never drive that way"; and that he kept going the same speed. On the witness stand he testified on direct examination that when he got to the top of the hill going west, he saw the truck coming toward him and the blue car going

from him; that they were almost side by side, the truck over the center line to the north about a foot and a half and the blue car over the dish of the highway; and that he (Nemer) was then about a block and a half away from them. "I just don't have any way to figure out my way to go through between them because there was no room between them to go through." "I have to use the best knowledge I had to avoid both of them and I pulled out to the left, my left, as much as I can." "Then I seen the south side of the road was more clear to me to go through and avoid the car and the truck both so I pulled out to my left, to my left, because the shoulder there it was wider and I see there is more room for me if I could miss the truck and go on his right I would avoid him." "* * * by the time I got to the truck I wasn't able to clear away from it, he hit me." On cross-examination by his attorney he testified that he did everything in his power to avoid the truck "As soon as I saw it coming up toward me." On cross-examination by the other defendants he testified that the driver of the blue car had his hand out; that he didn't remember whether or not he applied his brakes; "* * * I could see myself I can't go through"; "I was trying to avoid it; I tried to go to my left as much as I can"; that he did not remember hitting a muddy spot in the road; that "The only muddy spot I could tell you about I seen it in the pictures" that were shown to him by the patrolman; that he did not think he lost control of his car; and that he remembered everything until he was hit. He admitted testifying at the coroner's inquest that "As I was coming along as I had been for the last 20 years just hit this spot is all, wet spot, a lot of mud on it I guess"; and further on cross-examination that "I don't remember whether I lost control of the car"; "I had control * * *" but he didn't remember if he had control up to the point of impact; "I lost control but I didn't know when or where"; then he immediately denied loss of control.

He again was asked about a muddy spot, said he didn't remember it, and again referred to what the patrolman showed him.

In his deposition Nemer testified that the first intimation he had that anything was going to happen was when he started down the hill and saw the truck coming toward him; that he tried to avoid it and turned to the left (south) where he had more room and "got into the truck's way," and again, "I started pulling to the south side myself on purpose to avoid the truck." This statement in effect was made repeatedly. As to mud and slipping and loss of control he testified that he reached the top of the hill, hit a muddy spot, and lost control; that there had been no muddy spots before he got to the top of the hill; that he had made no effort to stop his car from Atlantic to the point of impact; that evidently he hit a wet muddy spot; that when he tried to avoid the car he turned to the south and that is where he hit that muddy spot about halfway down the hill; and that he lost control then and that "* * * I lost control of the car after I went into the truck." Throughout this deposition he repeatedly stated that the only thing he knew about mud on the highway was from the pictures shown to him by the patrolmen. As to brakes he testified that he tried to use his brakes; that he started to use them the instant he saw the car ahead of him; that it was hard to use brakes on a muddy or wet road; that "* * * you couldn't push your brakes clear to the bottom * * *" on a highway like that; and that he was asked at the coroner's inquest about the use of brakes and answered, "* * * as usual I drive I never had to depend on my brakes in any way."

We find no evidence as to either track marks or skid marks on the highway. In the deposition Nemer further testified that he saw the driver of the blue car have his hand out; that he could not tell which way

he was pointing to turn and "that is what got me excited."

It is undisputed that the Nemer car got in front of the truck, the impact came, and then the Nemer car passed between the truck and the south embankment. It stopped 30 to 35 feet west of the truck and the truck traveled about half its length after the impact. The right front end of the truck and the right rear door and fender of the Nemer car were the points of initial impact. Both truck and car were badly damaged.

The driver of the blue car and the truck driver testified for the defendants other than Nemer. The driver of the blue car testified that he did not give any signal to turn and that in his rear view mirror he saw a car behind him and seconds thereafter he heard the impact. The drivers of the blue car and of the truck both testify that the truck was on the south half of the paved surface and that they passed each other without difficulty. The truck driver testified that he saw the Nemer car come out from behind the blue car, then go back in behind it, and then out again on the south side of the pavement and it came across in front of him, and that when he saw the Nemer car zigzagging in and out, he turned the truck course off the pavement to the south and the right rear wheel and both front wheels were off the pavement when the impact occurred.

We have stated and weigh the evidence consistent with the established rule that "A motion for directed verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and have the benefit of every inference that can reasonably be deduced from the facts in evidence." Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491.

The Iowa guest statute is: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle." Code of Iowa, 1946, § 321.494. The intoxicating liquor provision is not involved here.

In Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46, the Supreme Court of Iowa defined the term "reckless" in the following language: "In light of the circumstances under which said Chapter 119 was passed, it is apparent, we think that the Legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless,' one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.'" In Hebert v. Allen (Iowa), 41 N. W. 2d 240, the court reaffirmed the rule in the Puth case, and stated that there had been no essential departure from it, and that it had the merit of being abstract, a necessary quality since it must be applied to widely differing facts.

The Iowa guest cases are exhaustively reviewed in Russell v. Turner, 56 F. Supp. 455, and on appeal in 148 F. 2d 562, wherein the court points out the difficulty involved in attempting to reconcile all the decisions of the Supreme Court of that state. We do not attempt to do so.

The Iowa court in applying its definition has given rules that assist in evaluating the sufficiency of the evidence here.

Speed alone does not amount to recklessness. Whether

or not a speed is dangerous depends upon the surrounding and attendant circumstances. Thornbury v. Maley (Iowa), 45 N. W. 2d 576. See Mayer v. Sheetz, 223 Iowa 582, 273 N. W. 138.

To establish reckless operation under the Iowa statute it is necessary to show that the danger was known to the driver, or was so obvious and apparent that the driver must be held to have known of it; or that there was a danger amounting to an almost certain probability and not a possibility; and that the driver, with conscious knowledge of such situation, did not exercise the slightest care to avoid injury to his guest. Roberts v. Koons, 230 Iowa 92, 296 N. W. 811; Peter v. Thomas, 231 Iowa 985, 2 N. W. 2d 643; Long v. Pearce, 233 Iowa 1025, 10 N. W. 2d 50; Russell v. Turner, *supra*.

The actions and conduct of the driver and not his mental attitude measure the degree of care and determine whether or not he is proceeding with a heedless disregard for the rights of others. Hebert v. Allen, *supra*.

The plaintiff must show some act of the driver which would be pronounced as an utter indifference to the safety of the guest in his car. Levinson v. Hagerman, 214 Iowa 1296, 244 N. W. 307; Mescher v. Brogan, 223 Iowa 573, 272 N. W. 645; Long v. Pearce, *supra*.

Conduct arising from mere inadvertence, thoughtlessness, or error of judgment is not reckless. Harvey v. Clark, 232 Iowa 729, 6 N. W. 2d 144, 143 A. L. R. 1141.

For the purposes of this opinion, Nemer's speed from Atlantic, Iowa, must be taken at his estimate of 75 to 80 miles an hour. On this record it stands without dispute that Nemer drove without event or incident 35 miles from Atlantic to the crest of the hill at the same speed, through rain, on wet, slippery pavement, up and down hills, and across the mud along west of the filling station. There were no other material facts and surrounding circumstances shown in connection with the rate of speed. It must follow that there was nothing

in the speed or surroundings or circumstances to bring that driving within the definition of reckless. Certainly he was not proceeding with utter indifference to the safety of his guest.

The question asked by the guest as to why the host was driving so fast, hardly rises above a question as to the why of the speed, not as to excessive speed. But taken as a protest, it was made 35 miles and 30 minutes before the accident. We find no further reference to any statement of concern or alarm thereafter. It is obvious that the guest did not deem the speed to be negligent, much less reckless. She rode that distance without comment or protest so far as this record discloses.

This brings us to the fact that Nemer came to the crest of the hill driving at a high speed and unable to see what was on the slope beyond. Does that convert his operation into a reckless one? It is readily apparent that there always exists the possibility of two cars passing, as were the truck and the blue car here, on a side hill hidden from view, but it does not reach the "almost certain probability" suggested by the court in the cases hereinbefore cited. The driving over the hill, unable to see what was immediately ahead, does not in and of itself constitute reckless operation or show utter indifference to the safety of the guest.

Did Nemer's conduct after he saw the presence of the truck and the blue car ahead constitute reckless operation of his car? Certainly the presence on the pavement of occasional spots of mud was not within the class of an obvious, apparent, or permanent source of danger. The spots were not known to him. Whether he applied or failed to apply his brakes and whether or not he skidded is not material here. The material thing is that when he saw the location of the truck and the blue car a block and a half ahead, he exercised a quick judgment. He had the alternatives of trying to stop, trying to go between the truck and the blue car, passing the blue car on the shoulder to the north, or going

around the truck to the south. The evidence indicated that he considered these alternatives. He repeatedly affirms that he tried, intentionally, to go around the south side of the truck. These are not actions and conduct showing indifference, much less utter indifference, to the safety of his guest. These are actions and conduct showing a high degree of concern for that safety.

Our conclusion, guided by the Iowa decisions, is that plaintiff failed to prove a cause of action under the Iowa law.

Heretofore we have been required to construe and apply the Iowa guest statute. See, Graham v. Higgins, 121 Neb. 211, 236 N. W. 689; Barnard v. Heather, 135 Neb. 513, 282 N. W. 534; Bailey v. Bryant, 127 Neb. 843, 257 N. W. 241; Jennings v. Biurvall, 122 Neb. 551, 240 N. W. 757; Bittner v. Corby, 138 Neb. 738, 295 N. W. 277.

Barnard v. Heather, *supra,* factually is in many respects quite similar to the instant case. We there reviewed and followed the Iowa authorities and reversed a judgment for the plaintiff and dismissed the cause. Many of the authorities cited in the Barnard case are cited and relied upon here. The same determination is made here.

The trial court erred in overruling the motion of defendant for a directed verdict and for judgment notwithstanding the verdict. Pursuant to the authority of section 25-1315.03, R. R. S. 1943, the judgment of the district court is reversed and the cause is remanded with directions to enter judgment for the defendant Nemer.

REVERSED AND REMANDED WITH DIRECTIONS.

YEAGER, J., participating on briefs.