ROSS CAPPELLANO, APPELLANT, v. ANTHONY PANE, APPELLEE.

134 N. W. 2d 76

Filed March 26, 1965. No. 35849.

Stoehr, Rickerson, Sodoro & Caporale and Frank Meares, for appellant.

Haney, Walsh & Wall and Gordon H. Miles, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

The plaintiff Ross Cappellano brought this action against the defendant Anthony Pane in the district court for Douglas County, Nebraska. Its purpose was to recover for personal injuries which the plaintiff sustained in a one-car accident while riding in defendant's automobile. The accident occurred on U. S Highway No. 75 in the State of Iowa which requires our application of the laws of that state to the cause of·action.

At a trial to a jury, the defendant's motion for a dismissal or in the alternative for a directed verdict for the defendant made at the close of the plaintiff's evidence was sustained and the case was dismissed. Plaintiff brings the cause here on appeal after his motion for a new trial was overruled.

The plaintiff assigns error to the trial court in its sustaining defendant's motion for a directed verdict which plaintiff claims was contrary to the law and the evidence presented.

Plaintiff Ross Cappellano was seriously injured in a one-car accident which occurred on U. S. Highway No. 75, hereinafter referred to as highway 75, near Mondamin, Iowa, on September 18, 1960. Plaintiff at that time was riding on the front seat of a 1953 Buick two-door hardtop then operated and owned by the defendant. Both plaintiff and defendant were residents of Omaha, Nebraska. They were friends, having known each other since the defendant came to Omaha from Italy 6 to 8 years previously. The morning before the accident the plaintiff drove to the defendant's home and asked if the defendant wanted to go to the dog races at Sioux City, Iowa. The defendant said he would like to go but that he would take his car. Later the defendant picked up the plaintiff at the plaintiff's home. After attending the dog races, the accident occurred while they were returning to Omaha from Sioux City. They had previously attended race tracks together at Columbus and Grand Island, Nebraska. Defendant had never before driven over the road which they took on their trip but the plaintiff had. The defendant did not know the road, had no road map, and did not ask anyone how to get there. The defendant admitted that under the circumstances the plaintiff must have directed him and that the plaintiff was the one who must have known the way. The road taken by them included a portion of highway 75 through Mondamin. On their return over this same segment the accident occurred.

They left the race track right after seeing the last race about 6 o'clock p.m. Plaintiff had won $88 at the races and the defendant told plaintiff that he had lost. Defendant asked to borrow $20. Plaintiff gave him $20. Plaintiff testified on direct examination: "I said, 'Keep ten for the car and keep ten for yourself.' You know, I more or less loaned him ten, and the other ten was for the car." When asked, "By the 'car,' you mean what?" he answered, "Service, you know, for taking me up, for him and I. He paid for going up, and I wanted to pay my

share going back." The defendant accepted the money and it was given to him out of the $88 which the plaintiff had won. When plaintiff was asked on cross-examination, "Now, Mr. Pane wasn't charging you for this ride, was he?" he answered, "No, he wasn't; not right offhand, he wasn't, no."

Before reaching Mondamin it had become dark and the lights on the car were on. Plaintiff had previously laid down in the front seat about dusk after they had gone 10 or 15 miles out of Sioux City on the interstate before reaching highway 75. He testified that just before lying down he told the defendant to, " 'Take it easy, because we don't want to get a ticket.' " that there were " 'a lot of highway patrols. Keep it down.' " After this he fell asleep and remembers nothing of what happened until after the accident.

The testimony concerning what occurred at and near the scene of the accident is supplied by Michael Koory, Jr., and Sam Grasso, both of whom reside in Omaha and had traveled the road many times. They had been to the same race course that day and were returning to Omaha, both riding in the front seat of an automobile driven by Koory. What later was identified as the Pane car passed that in which they rode to its left going south just north of Mondamin on highway 75 with its lights on. Koory was then driving at from 60 to 70 miles per hour. The highway there is a two-lane blacktop road. The weather was clear and the road was dry but vision was limited by darkness. A short distance further south from where the Pane car passed them highway 75 curves sharply to the east, or left, in going to Omaha. A warning sign 1½ by 1½ feet square is located before the curve is reached although its exact distance from the curve is not shown. It consists of a curved arrow pointing to the east. At the point where the curve begins to turn east there is a dirt or graveled road proceeding on south in the general direction of highway 75 although not pecisely in line with it. An

area is left between the highway as it makes the curve and the dirt road. The Pane car continued straight ahead off the highway into the area between the two roads. From the point where the automobile left the road the ground drops off approximately 6 feet and there is a sort of gully there. The defendant's car went down the drop and traveled a distance of 100 yards or more landing on its roof upon a pile of rocks or boulders. Both occupants were thrown from the car on opposite sides and landed a considerable distance from it.

Concerning the nature of the curve, Koory said: "It is a curve that I would say you would have to take with caution or know it is there or it is very easily missed." One not familiar with it might have gotten the impression the road went straight on south, particularly so if cars were approaching from that direction. Grasso's testimony was much the same as to the nature of the curve. As the Pane car passed, Grasso said, " 'This car is going to go by us; I hope he makes the curve.' " He saw dust flying and exclaimed, " 'I don't think he made the curve.' "

Two questions are raised by the plaintiff's contention that there was error in the trial court sustaining the defendant's motion for a directed verdict. The first question concerns whether the plaintiff was a guest within the meaning of the Iowa code. Section 321.494, I. C. A., 1946, reads: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

Concerning the first question, the plaintiff's argument is two-pronged. He contends the plaintiff as a rider in the vehicle directed the route to be taken by the defendant and this he claims constituted a benefit to the defendant, or a mutual benefit to both of them. This

because it is shown the defendant did not know the road from Omaha to Sioux City, had no road map, and made no inquiries, and because defendant concedes that plaintiff assisted him in directing the course of the route to be taken. He also urges that in any event the payment of the $10 for the use of the car and the $10 as a loan made him a passenger for hire and not a guest. He urges that because of either contention, or the two combined, at least the question of whether he was a guest or a passenger for hire or one whose presence was for the benefit of both of them mutually should have been submitted to the jury.

There are many cases from the Supreme Court of Iowa interpreting the guest statute set out with respect to the status of those riding in an automobile driven by others. The case of Nielsen v. Kohlstedt, 254 Iowa 470, 117 N. W. 2d 900, was a case where a "mud mixer" to a bricklayer, and the bricklayer himself, both engaged in construction work on the same job, rode together to their work. The plaintiff, the "mud mixer," was injured by an accident which occurred while riding in the defendant bricklayer's car as a result of an intersection collision. The court held that a motion for a directed verdict should have been sustained and reversed a judgment entered for the plaintiff on a verdict. In doing so, the following rules were laid down: Guest statute, although in derogation of common law, is to be liberally construed with a view to promote its objects and assist the parties in securing justice.

In determining whether the occupant is a guest, each case must be decided in the light of its own facts, and it is always important to ascertain, if possible, what it was that primarily motivated the undertaking.

To remove a passenger from guest category, it is not sufficient that parties have a common interest and purpose in the trip or that it is contemplated that some indirect benefit will accrue to the operator, but the motive or provocation for the invitation must be more

than social, the transportation must be in furtherance of something in the nature of a business or commercial interest, and the benefit derived must be material and tangible and must flow from and depend on transportation, although it is sufficient if the benefit comes from a third person.

Murray v. Lang, 252 Iowa 260, 106 N. W. 2d 643, was a case where two young men, one the son of the owner of the automobile and the other the operator thereof, were friends. Both had dates at the town of Kellogg. The son of the owner, who was killed in the accident, had the car to use in keeping his date. The operator went along so he would be enabled to keep his date also but was permitted to drive. In an action against both the driver of the other car and the operator of the car in which the deceased rode, the decedent was treated by the court to be the owner of the car in which he rode. The appellate court held the trial court was correct in holding as a matter of law that the decedent was a guest in the car at the time, stating: "Whether he be owner or passenger—there is a presumption—rebuttable—that an occupant riding in a car operated by another person is a guest within the meaning of the guest statute, and he has the burden of proving otherwise in an action predicated upon negligence of the operator."

The plaintiff in his brief relies to a considerable extent on the case of Livingston v. Schreckengost, 255 Iowa 1102, 125 N. W. 2d 126, where two schoolteachers living at Mason City, Iowa, were attending summer school at the State College of Iowa at Cedar Falls. There was evidence of an agreement to share expenses of commuting between the two cities, one to drive one day and the other the next. In a suit by the administratrix of the estate of the one killed in an automobile accident while the other was driving, the Iowa court held there was a jury question of whether the purpose of the arrangement was primarily social and saving of expenses incidental,

bringing the guest statute into application, or whether the relationship was primarily one of business, and held: Defendant in an automobile negligence action is not required to raise the question of the passenger's status as a guest as an affirmative defense, but plaintiff, if a passenger, must prove as part of her main case that she was riding in the automobile in some relationship other than as a guest. In the cited case the court said: " 'Ordinarily where the only benefits conferred upon the person extending the invitation are those incidental to hospitality, companionship or society, the passenger is held to be a guest. Where the passenger is a social guest or casual invitee he is usually regarded as a guest even though he may contribute something toward the expenses of the journey and may be expected to operate the car on part of the trip.' " Many Iowa cases are there cited.

Other cases of the Iowa court refer more particularly to the relation of the parties as affected by the payment of money to the owner or operator by the injured party. Included among them is the case of McCornack v. Pickerell, 225 Iowa 1076, 283 N. W. 899, where plaintiff was riding in the automobile at the invitation of defendant with the understanding that plaintiff was to pay for a third of the gas and oil, take a lunch, and help pay expenses of the trip. The court found the plaintiff was not a passenger for hire but a guest who could not under the automobile guest statute recover for mere negligence. It held the mere division of expenses among members of a party riding in an automobile does not render the person so contributing a passenger for hire as regards applicability of the automobile guest statute. The appellate court concluded that although there was a verdict and judgment for the plaintiff, the trial court should have sustained defendant's motion for a directed verdict. A similar case with like results is Haas v. Owens, 248 Iowa 781, 81 N. W. 2d 654.

It appears quite clearly that the purpose of the plaintiff in going to Sioux City was primarily social. Apparently both plaintiff and defendant enjoy going to races. They had done so before. The plaintiff first suggested the present trip. It would appear he desired companionship not relating to business. There was no agreement as to the payment of expenses in advance, nor was any shown on the occasions of the previous trips to Columbus or Grand Island. The contention that the plaintiff's presence was of value to the defendant in directing the roads to be taken lacks substance. We cannot regard it as material or tangible. The defendant could easily have procured maps or made inquiry and ascertained the way, but quite naturally relied on his friend who had suggested the trip and was present and familiar with the route. This is consistent with a social outing as well as a business trip. Plaintiff seems to argue he was in a sense acting as a guide to the defendant in the operation of his automobile. It might be said in passing that if he so considered himself, he seems to have failed in his office at the crucial period of the trip when, at the approach of darkness after giving a final and rather perfunctory warning, he laid back and went to sleep. Neither are we impressed with the payment of $10 on the expense of the car. The defendant had requested a loan of $20. The plaintiff had been quite fortunate at the races, very probably unusually so, and had won $88. His companion had lost. Plaintiff appears to have loaned him $10 and gratuitously given him $10. If the defendant had been the lucky one he might have done likewise. The burden to show the trip was of a business nature was on the plaintiff. The same is true as to the burden of showing he was a passenger for hire. The Iowa court in cases which appear as favorable to the plaintiff as the one before us upon these issues has held as a matter of law that the occupant of the car was a guest within the meaning of the statute. The plaintiff's

contention that he was not a guest under the circumstances cannot be sustained.

Having decided that the plaintiff's status in the defendant's car was that of a guest, the question remains as to whether or not there was sufficient evidence to submit the question of whether the defendant was guilty of reckless driving within the terms of section 321.494, I. C. A., 1946. This court as late as 1951 reviewed the cases under the Iowa statute in the case of Yanney v. Nemer, 154 Neb. 188, 47 N. W. 2d 368. Many of the applicable Iowa cases are cited in the opinion in that case. There this court called attention to the review of the Iowa cases in Russell v. Turner, 56 F. Supp. 455, and the appeal thereof in 148 F. 2d 562. The same case pointed out other Nebraska cases where the Iowa guest statute had been reviewed and construed before. We have now been cited by the plaintiff and defendant to more recent Iowa cases, most of which we will not review for the reason that we can find in them no departure to those rules which we set out in Yanney v. Nemer, *supra,* which were as follows: "As used in the Iowa guest statute, 'reckless operation' means proceeding without heed of or concern for consequences. It means more than negligent operation. It may but does not necessarily include willfulness or wantonness. It implies no care coupled with disregard for consequences. Speed alone does not amount to recklessness. Conduct arising from mere inadvertence, thoughtlessness, or error of judgment is not reckless.

"Under the Iowa guest statute the actions and conduct of the driver and not his mental attitude measure the degree of care and determine whether or not he is proceeding with a heedless disregard for consequences.

"In order for a guest to establish reckless operation under the Iowa guest statute, it is necessary to show some act of the host that amounts to utter indifference to the safety of the guest.

"To establish reckless operation under the Iowa guest

statute, it is necessary to show that the danger was known to the driver, or was so obvious and apparent that the driver must be held to have known of it; or that there was a danger amounting to an almost certain probability and not a possibility; and that the driver, with conscious knowledge of such situation, did not exercise the slightest care to avoid injury to his guest."

We deem it appropriate, however, to discuss the case of Fritz v. Wohler, 247 Iowa 1039, 78 N. W. 2d 27, a 1956 case in which again the Iowa Supreme Court sustained the judgment of the trial court in directing a verdict for the defendant, and the Iowa court reviewed the cases construing its guest statute as follows: "Throughout the 25 years of deciding reckless-driving cases we have consistently based the question of submission to the jury on a foundation of similar principles of law. We quote from the first decision rendered in 1931 and from one of our two recent decisions rendered in 1956. In Siesseger v. Puth, supra, we said at page 182 of 213 Iowa: 'In light of the circumstances under which said chapter 119 was passed, it is apparent, we think that the Legislature intended the word "reckless" therein to mean "proceeding without heed of or concern for consequences." To be "reckless," one must be more than "negligent." Recklessness may include "wilfulness" or "wantonness," but if the conduct is more than negligent, it may be "reckless" without being "wilful" or "wanton," but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies "no care, coupled with disregard for consequences." ' In the recent decision of Nesci v. Willey, supra, we said at page 624 of 247 Iowa, page 259 of 75 N. W. 2d: 'To constitute recklessness under the guest statute, conduct must be more than negligent and must manifest a heedless disregard for or indifference to the consequences or the rights or safety of others. It, of course, need not involve moral turpitude or wanton and willful misconduct. Harvey

v. Clark, supra (232 Iowa 729, 6 N. W. 2d 144, 143 A. L. R. 1141). There must be an awareness, actual or constructive, of the unusual danger presented by the circumstances, and also a manifestation of "no care." Schneider v. Parish, supra (242 Iowa 1147, 49 N. W. 2d 535). We have frequently and consistently held that conduct arising from mere inadvertence, thoughtlessness or error in judgment is not reckless. Harvey v. Clark, Olson v. Hodges (236 Iowa 612, 19 N. W. 2d 676) and Schneider v. Parish, all supra, and cases cited therein.' "

We think the discussion in this case as well as our review of the other Iowa cases in the briefs of the parties show that there has been no departure by the Iowa court from the rules stated by this court in its review in Yanney v. Nemer, *supra*.

In the case before us the defendant operator of the car had only been over the road in question once and that was in the opposite direction and in the daytime. He approached a curve which according to the testimony of the plaintiff's own witnesses was one which would have to be taken with caution and would be very easily missed. Although the defendant must have passed Koory's car at a speed of more than 60 to 70 miles per hour, there is no evidence as to any statutory speed limit applying other than a restriction to that which was reasonable and proper. Also in Fritz v. Wohler, *supra,* it was held that speed alone could not be considered reckless driving. The plaintiff urges that the distance the automobile traveled after it left the road before it came to rest on its top is significant but it would only indicate speed at the most, and moreover there was drop of 6 feet from the road and the car was found in the gully. Whether or not defendant lost control when the car took the drop is not shown. We do not think the evidence submitted shows that the defendant used no care coupled with heedless disregard or indifference to the consequences. Neither does it

show that because he had once driven the road in the daytime and in an opposite direction that he was aware actually or constructively of the unusual danger presented by the circumstances. It may be conceded that his conduct arose from inadvertence, thoughtlessness, and an error in judgment but as a matter of law reckless conduct was not established.

It follows that the judgment of the trial court was right and should be and is affirmed.

AFFIRMED.